## STORM *v.* UNITED STATES.

1. Alleged errors, not presented by a bill of exceptions, nor otherwise apparent on the face of the record, are not the proper subjects of re-examination by an appellate tribunal.
2. Defendants who have actually received the consideration of a written agreement cannot, in an action brought against them for a breach of their covenants, set up that the agreement did not bind the plaintiff to perform his covenants, provided it appears that he has performed them in good faith and without prejudice to the defendants.
3. Questions propounded to a witness, on his cross-examination, merely to ascertain the names of persons whom a party may desire to call as witnesses to disprove the case of the opposite party, may be excluded; and it is within the discretion of the presiding judge to determine, in view of the evidence previously introduced, and of the nature of the testimony given by the witness in his examination-in-chief, to what extent a cross-examination, with a view to affect his credibility, shall be allowed.

ERROR to the Circuit Court of the United States for the District of California.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. Quinton Corwine* for the plaintiff in error, and by *Mr. Assistant Attorney-General Smith* for the defendant in error.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Errors of the Circuit Court resting in parol cannot be re-examined in this court by writ of error. Instead of that, the writ of error addresses itself to the record; and the rule is, that, whenever the error is apparent in the record, whether it be made to appear by bill of exceptions, an agreed statement of

facts, or by demurrer, the error is open to re-examination and correction.

Whatever error of the court is apparent in the record, whether it be in the foundation, proceedings, judgment, or execution of the suit, may be re-examined and corrected; but neither the rulings of the court in admitting or excluding evidence, nor the instructions given by the court to the jury, are a part of the record, unless made so by a proper bill of exceptions. *Suydam* v. *Williamson*, 20 How. 433.

Two of the defendants, to wit, Storm and Shrader, entered into a written contract with the assistant quartermaster of the army, acting in behalf of the United States, to deliver at the several places therein mentioned, in and about the harbor of San Francisco, in such quantities and such monthly proportions as the quartermaster should determine, 1,000,000 pounds of barley, 1,000,000 pounds of oats, 2,000,000 pounds of hay, called oat hay, and 500,000 pounds of straw; it being stipulated that the contractors should receive, as payment for the supplies delivered and accepted under the contract, the following prices, in gold coin, or equivalent in legal-tender notes; to wit, $10.65 for each 1,000 pounds of barley, $12.65 for each 1,000 pounds of oats, $5.90 for each 1,000 pounds of hay, and $4.30 for each 1,000 pounds of straw.

Forage and straw to be delivered, it was stipulated, should be of the best quality in the market; and if, in the opinion of the commanding officer at the place of delivery, it was unfit or of a quality inferior to that prescribed by the contract, it was stipulated that a survey should be held by one or more officers, to be designated by the commanding officer, and that the board of survey should have power to reject the whole, or such portions of the same as appeared unfit for issue, or of a quality inferior to the contract.

Supplies of the kind were to be not only of the best quality in the market, but clean and fit for immediate use. In case of failure or deficiency in quantity or quality delivered, power was vested by the contract in the assistant quartermaster or his successor to supply the deficiency by purchase in open market; and the contract provides that the contractors shall pay the difference in cost in gold coin, or its equivalent in legal-tender notes.

Public contractors of the kind are required to give bond with sureties to the United States for the faithful performance of their contracts; and the declaration shows that the contractors in this case gave bond to the United States, with the other two defendants as sureties, in the sum of $12,000, conditioned that, if the contractors observe, perform, fulfil, and keep the covenants and stipulations of their written agreement, the obligation shall be void; otherwise, to remain in full force and virtue.

Breaches of the conditions occurred, as the United States alleged, and they instituted the present action of debt on the bond against the principals and their sureties. Distinct breaches of the agreement were assigned in the declaration, as fully appears in the record.

Service was made, and the defendants appeared and filed an answer, setting forth the following defences: 1. They deny all and singular the allegations of the declaration. 2. That at the close of December, 1870, there was due and owing to the contractors under the agreement the sum of $1,476.43, for supplies furnished and accepted by the commanding officers at the respective places of delivery. 3. That the contractors up to that time and during that month had delivered all such quantities and proportions of forage and straw as were required by the assistant quartermaster, and of the best quality in the market. 4. That the assistant quartermaster during the whole of that time had funds on hand to pay and discharge the full amount due to the contractors, as contemplated by the agreement. 5. That the quartermaster wrongfully refused to pay the amount due and owing to the contractors, or any part thereof. 6. That the contractors, in consequence of such wrongful refusal and neglect to pay and discharge the amount due and owing to them, on the 3d of January, 1871, personally notified the assistant quartermaster that they elected to treat the agreement as rescinded and abandoned, and that they did not intend to furnish any more supplies under the same.

Subsequently the parties went to trial, and the verdict and judgment were for the plaintiffs, in the sum of $2,615.40. Exceptions were duly filed by the defendants, and they sued out a writ of error, and removed the cause into this court.

Since the case was entered here, the defendants below have

filed a brief, as required by the rules of the court; but it does not contain either a statement of the case or an assignment of errors. Such a party, under such circumstances, is not entitled to be heard; but inasmuch as the plaintiffs below have filed a printed brief in the case, without objecting that the defendants have not complied with the twenty-first rule, the court will proceed to examine the questions presented in the bill of exceptions exhibited in the record.

Sufficient appears there to show that the plaintiffs offered the described agreement in evidence to sustain the issues on their part, and that the defendants objected to the introduction of the same, insisting that the agreement was not mutually obligatory, that it was given without consideration, and that it was inoperative and void; but the court overruled the objection, and the agreement was read in evidence to the jury.

Evidence was also introduced by the plaintiffs to prove the quantity and value of the grain, forage, and straw bought in open market by the plaintiffs, by reason of the failure of the defendants to deliver the quantity and quality which they agreed to furnish, in order to show the difference between the contract price and the price paid by the plaintiffs in the open market, and the consequent loss to the plaintiffs, as alleged in their complaint. Inquiries were made of the witness as to the quantities and qualities of the supplies so purchased in behalf of the plaintiffs during the three months next following the time of the attempted rescission of the agreement by the defendants, and the witness gave the price paid for each parcel, and added, that the prices paid were the regular market prices in gold coin, and perhaps a little less than he charged to other customers. He stated, on cross-examination, that sometimes, when he did not have the supplies wanted on hand, he went out and purchased what was necessary to fill the order, and that he usually filled the orders on the same or the following day.

Without entering fully into the details of the testimony, it is proper to remark that he testified that he furnished 69,008 pounds of oats, 77,518 pounds of hay, and 25,789 pounds of straw before the month closed in which the defendants gave the notice of their intention to rescind the contract. In the

course of his examination-in-chief the witness gave the name of a firm of whom he bought some hay to fill some one of the orders, and the defendants inquired of whom he purchased the quantity of oats charged to the United States in his account; to which interrogation the plaintiffs objected, and the court sustained the objection and excluded the question.

Due exceptions were taken to the preceding rulings, and the defendants asked the witness if he did not commute with some of the subordinate officers for some portion of the forage to which they were entitled, paying them in money instead of forage, grain, or straw; and, if so, he was asked to state what quantity of such supplies were charged on his books during those three months as having been purchased in open market, which were not so purchased, but were commuted by the witness with the officers, paying them money instead of delivering the required supplies; to which the witness replied that he could tell by looking at his books. He was then requested by the defendants to look at his books and to state what amount of such supplies, within that period, was charged by him which was not purchased in open market and delivered to the United States. Prompt objection was made to the question as irrelevant and immaterial, and it was excluded by the court.

Testimony, undisputed and uncontradicted, was introduced, showing that during the first six months of the year the quartermaster's requisitions for oats, barley, hay, and straw for the military posts named in the agreement were not in excess of the quantity prescribed by law, nor in excess of the quantity required in the requisitions and estimates of the post quartermasters, and that the United States paid for the quantity estimated in such requisitions and no more, and that such payments were only made after receipts and vouchers were received from the proper officer at the military post, showing to the satisfaction of the quartermaster that the requisition had been filled as in the ordinary and usual course of business of the quartermaster's office.

Enough has already been remarked to show that the action is an action of debt founded on the bond given by the defendants to secure the faithful performance of covenants contained in their previously described written agreement. Reference

has already been made to all the exceptions taken by the defendants to the rulings of the court during the trial before the jury; but it is also objected in argument here that the bond described in the complaint was not produced at the trial, and that no copy of it was ever filed in the case. Such an objection, if it had been made in the court below, might have been available for the defendants, unless the plaintiffs had overcome it by producing the instrument, or by showing its loss and due search for it without success, and had offered secondary proof of its contents. Parol proof of the contents of a lost instrument of the kind is admissible, provided it appear that proper search has been made for it without success.

Had the defendants intended to insist that the bond should be given in evidence, they should have made that intention known at the trial; and, if not given in evidence, they might have requested the court to direct a verdict in their favor, and, in case their request had been refused, they would have had the right to except to the ruling of the court in refusing their request for instruction. Nothing of the kind was done; and, for aught that appears in the record, it may be that the bond was given in evidence, or, if not, that the defendants waived the right to require its production.

Errors apparent in the record, though not presented by a bill of exceptions, may be re-examined by writ of error in an appellate tribunal; but alleged errors, not presented by a bill of exceptions, nor apparent on the face of the record, are not the proper subjects of re-examination by writ of error in this court.

Parties dissatisfied with the ruling of a subordinate court, and intending to seek a revision of the same in the Appellate Court, must take care to raise the questions to be re-examined, and must see to it that the questions are made to appear in the record; for nothing is error in law except what is apparent on the face of the record by bill of exceptions, or an agreed statement of facts, or in some one of the methods known to the practice of courts of error for the accomplishment of that object. *Suydam* v. *Williamson*, 20 How. 433; *Garland* v. *Davis*, 4 id. 131; Steph. on Plead. 121; *Slacum* v. *Pomeroy*, 6 Cranch, 221; *Strother* v. *Hutchinson*, 4 Bing. N. C. 83.

Two additional remarks should be made respecting the written agreement before proceeding to examine the questions presented in the bill of exceptions: 1. That it was duly executed by the assistant quartermaster and the contractors, under the hand and seal of the respective parties. 2. That it contains the provision that it "may be terminated at such time as the quartermaster-general may direct," and that it is made subject to the approval of the department and division commanders.

Substantial breaches of the covenants of the agreement having occurred, the United States brought suit on the bond given to secure its faithful performance; and, when the United States offered the agreement in evidence to support the issues on their part, the defendants objected to its admissibility, insisting that it is a *nudum pactum;* that it appears on its face that it might have been terminated at any time at the election of the plaintiffs; that it is not mutually binding, and that, inasmuch as it is wanting in that respect, it is without consideration, and is inoperative and void.

Though no such error is assigned in this court, still it is obvious from the course of the argument exhibited in the brief that the defendants intend to maintain the same proposition in this court. Attempt was not made to invalidate the bond in that respect in the court below, nor is any such attempt made here by the defendants. What they do attempt to show is, that the agreement is inoperative, because it contains the provision that it may be terminated at such time as the quartermaster-general may direct, and in consequence of the provision that it is made subject to the approval of the department and division commanders.

Beyond doubt, the written agreement went into operation; and it is not even suggested that the department and division commanders ever expressed any disapproval of its terms and conditions, nor does the record furnish any evidence to raise a doubt that it was fully approved by all whose assent was necessary to give it a binding obligation. Suppose it to be true that the quartermaster-general might terminate it, if he should see fit, it is a sufficient answer to the suggestion to say, that he never did interfere in the matter, and that the contract con-

tinued in full force and operation throughout the whole period for which the necessary supplies were purchased by the United States in open market.

Where the defendant has actually received the consideration of a written agreement, it is no answer to an action brought against him for a breach of his covenants in the same to say, that the agreement did not bind the plaintiff to perform the promises on his part therein contained, provided it appears that the promises in question have, in fact, been performed in good faith, and without prejudice to the defendant. Addison on Contr. (6th ed.) 15 ; *Morton* v. *Burr*, 7 Ad. & Ell. 25.

Agreements are frequently made which are not, in a certain sense, binding on both sides at the time when executed, and in which the whole duty to be performed rests primarily with one of the contracting parties. Contracts of guaranty may fall under that class, as when a person solicits another to employ a particular individual as his agent for a specified period, and engages that if the person addressed will do so, he, the applicant, will be responsible for the moneys the agent shall receive and neglect to pay over during that time. The party indemnified in such a case is not bound to employ the party designated by the guarantor; but if he do employ him in pursuance of the promise, the guaranty attaches and becomes binding on the party who gave it. *Kennaway* v. *Trelcavan*, 5 Mees. & W. 501.

Cases often arise where the agreement consists of mutual promises, the one promise being the consideration for the other; and it has never been seriously questioned that such an agreement is valid, and that the parties are bound to fulfil their respective stipulations. *Miles* v. *Blackall*, 11 Ad. & Ell. N. S. 365; *Emerson* v. *Slater*, 22 How. 35.

Such a defence could not be sustained, even if the action was upon a simple contract; but the agreement here is under seal, and the action is an action of debt founded on the bond given to secure the performance of the agreement; and it is an elementary rule, that a bond or other specialty is presumed to have been made upon good consideration, so long as the instrument remains unimpeached. Taylor, Evid. (6th ed.) 103; *Lowe* v. *Peers*, 4 Burr. 2225; *Dorr* v. *Munsell*, 13 Johns. 431.

Want of consideration is not a sufficient answer to an action on a sealed instrument. The seal imports a consideration, or renders proof of consideration unnecessary ; because the instrument binds the parties by force of the natural presumption that an instrument executed with so much deliberation and solemnity is founded upon some sufficient cause. *Parker* v. *Parmele*, 20 Johns. 134 ; 1 Smith, Lead. Cas. (7th Am. ed.) 698 ; 1 Chitty on Contr. (11th Am. ed.) 20 ; *Paige* v. *Parker*,. 8 Gray, 213 ; *Wing* v. *Chase*, 35 Me. 265 ; 2 Bl. Com. 446 ; *Fallowes* v. *Taylor*, 7 Term, 473.

Seasonable exception was taken by the defendants to the ruling of the court, excluding the question propounded to the witness called by the plaintiffs, of whom he purchased the quantity of oats which he furnished to the United States. Three grounds are suggested to show that the defendants were entitled to have an answer: 1. That the answer might have affected the credibility of the witness. 2. That the defendants, if the name of the seller of the oats had been given, might have called him as a witness, and perhaps might have proved by him that the price paid was not as great as represented, or that a less quantity than that charged had been delivered. 3. That the answer might have shown that persons had an interest in the sale of the oats who are prohibited by the contract from having any share in furnishing such supplies.

None of the reasons assigned to support the exception are entitled to any weight, when considered in connection with the explanations given in the bill of exceptions. Evidence of an undisputed character had previously been introduced, showing that the requisitions for such supplies were not in excess of the quantity prescribed by law, and that the United States did not purchase and pay for any greater quantity than that specified in the requisitions, and that the purchases were made in the open market, and that the prices paid did not exceed the fair market value of supplies purchased.

Litigants ought to prepare their cases for trial before the jury is empanelled and sworn ; and, if they do not, they cannot complain if the court excludes questions propounded merely to ascertain the names of persons whom they may desire to call as

witnesses to disprove the case of the opposite party. Courts usually allow questions to be put to a witness to affect his credibility; but it is plainly within the discretion of the presiding judge to determine whether, in view of the evidence previously introduced, and of the nature of the testimony given by the witness in his examination in chief, it is fit and proper that questions of the kind should be overruled, and to what extent such a cross-examination shall be allowed. *Sturgis* v. *Robbins*, 62 Me. 293; *Prescott* v. *Ward*, 10 Allen, 209; *Wroe* v. *State*, 20 Ohio St. 460; 1 Greenl. Evid. § 449.

Purchases to supply deficiency arising from the failure of the contractors to perform their contract were required to be made in open market, in order to ascertain the excess of cost, if any, beyond the contract price; and the bill of exceptions shows that the evidence to prove that the purchases made by the United States were so made was undisputed and uncontradicted. Still, the defendants asked the witness called to prove those facts whether he did not commute with some of the subordinate officers for a portion of the forage to which they were entitled, instead of delivering the same to such subordinate officers, to which no direct answer was given; but when the witness was asked if he could state what quantity of such supplies were charged on his books as delivered, which was adjusted by commuting the same with the subordinate officers, he answered that he could by looking at his books. Prior to that, the witness had stated that the prices charged were regular market prices in gold coin, which is in strict conformity to the terms of the agreement; but the defendants requested the witness to examine his books, and to state what the amount was which had been commuted; to which interrogatory the plaintiffs objected, and the court excluded the question.

Interrogatories calling for immaterial testimony may be excluded in the discretion of the court, as shown by the authorities to which reference has previously been made. Doubt upon that subject cannot be entertained, and it is equally certain that it is error to exclude a question, proper in form, which calls for evidence material to the issue. Difficulty frequently arises in determining whether a particular question falls within the one or the other of these categories; and in solving that

doubt, it often becomes necessary, especially in an appellate court, to ascertain what the state of the case was when the question was propounded, and what the effect of the evidence would have been if it had been admitted.

No attempt is made to impeach the fairness of the requisitions made by the quartermaster, or to show that they were greater than the public service required; nor is it contended that the prices paid to supply the deficiencies were higher than the regular market prices in gold coin. What the defendants suggest is, that the agent employed to provide and deliver the deficiency paid some of the subordinate officers in money, instead of delivering the required amount of forage and grain, as he should have done. Both the agent and the subordinate officers in question agreed to the commutation; nor is it suggested that the quartermaster approved the commutation, or that he had any knowledge of the irregular transaction of the agent. Proper charges were made by the agent, and the same were duly paid by the proper disbursing officer.

Viewed in the light of these suggestions, it is clear that no injury resulted to the contractors. They did not suffer by the irregularity, nor is it perceived that it is a matter with which they have any concern, and it certainly furnishes no grounds for reversing the judgment.                    *Judgment affirmed.*