## SOMERVILLE *v.* WILLIAMS.

MECHANICS' LIENS; CONTRACTS; SUBCONTRACTORS AND MATERIAL-MEN.

1. The subcontractors of a subcontractor are not entitled to a mechanic's lien under the mechanics' lien law in force in this District; *following* Leitch v. Hospital, 6 App. D. C., 247, and Herrell v. Donovan, 7 Id. 336.

2. Where one party has received the consideration of a written agreement, it is no answer to a breach of such contract that the agreement does not bind the other party.

3. Where material-men refuse to supply material to be used in the construction of a building, to a subcontractor, unless he procures an order on them from the contractor for such material, and such an order is made and the materials are supplied, the material-men have a lien upon the building for the price of the supplies so furnished, in the absence of circumstances showing that the order was not a contract between the material-men and the contractor but a mere guaranty by them of a contract between the contractor and the subcontractor, especially where it appears the subcontractor abandoned the work while it was in progress and the contractor thereupon took possession of and used the materials in the construction of the building, and the owner paid the contractor the balance due on contract price of the building with knowledge of the claims of the material-men; *distinguishing* Herrell v. Donovan, 7 App. D. C. 322.

No. 781. Submitted March 16, 1898. Decided April 4, 1898.

HEARING on an appeal by the complainants from a decree dismissing a bill to enforce a mechanic's lien. *Reversed.*

The COURT in its opinion stated the case as follows:

This is a suit in equity instituted to enforce a claim of mechanics' lien against certain real estate in the District of Columbia.

The appellee, Almena B. Williams, being the owner of certain lots of ground situated in the suburb of Washington known as Mount Pleasant, through an agent, Robert E. Bradley, contracted with the appellee, William W. Winfree, a builder, to construct six houses thereon. Winfree contracted with a plumber, Thomas Brown, to furnish plumbing materials and do the plumbing work in the houses for the sum of $2,482. Brown did not himself have the plumbing materials and undertook to procure them from the appellants, Thomas Somerville, James W. Somerville, and Thomas Somerville, jr., who were dealers in such materials, and who were partners under the firm designation of Thomas Somerville & Sons. The appellants refused to deal with Brown on his own responsibility, which they seem to have regarded as unsatisfactory, and they insisted on an order from Winfree, the builder, for the materials, the estimated value of which amounted to $1,500. Brown thereupon procured from Winfree and delivered to the appellants an order, which was in the following terms :

" WASHINGTON, D. C., March 22, 1895.
" THOMAS SOMERVILLE & SONS :

" Deliver to Thomas Brown plumbing materials for 6 houses on 13th and Roanoke streets, N. W. (1 house corner of 13th street, and the others on Roanoke street), to the amount of fifteen hundred dollars ($1,500), and same will be paid for as follows :

"One-third, five hundred, when buildings are roughed in. Five hundred when bath tubs, closets and washstands are set. Balance, five hundred, when buildings are completed. $1,500.

"(Signed)                    W. W. WINFREE."

Upon the delivery to them of this order, the appellants from time to time delivered the required materials upon the premises, and furnished also some extra materials that were ordered, amounting, as it would seem, to upwards of $200 in value. But difficulties arose quite early in the matter of payment, into the details of which it is unnecessary here to enter. The result was that the appellants received only the sum of $500, the first payment to which they were entitled; and that Brown abandoned the work in an unfinished condition, having received from Winfree, on account of it, the sum of $686.50. Thereupon Winfree took possession of all the plumbing materials on the premises, which had been furnished by the appellants; and employed another plumber, John L. Shedd, to finish the work, to whom he paid for that service the sum of $626.44. So that, on account of the work in the first instance agreed to be done and the materials agreed to be furnished by Brown for the aggregate sum of $2,482, exclusive of the extra materials afterwards furnished by the appellants, there was paid in all the sum of $1,812.94, leaving unpaid the sum of $669.06.

Upon completion of the houses, there was controversy between the parties as to the final settlement, the principal difficulty, it would seem, being in regard to the extra materials furnished by the appellants, and negotiations were carried on for some time between them, in the course of which Winfree offered to settle with the appellants by the payment to them of $891.53 in satisfaction of their claim, which amounted to $1,180.45. The appellants refused the offer and threatened to file a lien against the property. This they were requested to postpone by Bradley, the agent of the owner, who participated in the negotiations; and they did accordingly postpone such action for a time. At last, however, on February 11, 1896, they filed their notice of lien; and on February 12, 1896, they filed their bill of complaint in the present case to enforce the lien. Notwithstanding this, and apparently with full knowledge of all the

facts, Bradley, the agent of the owner of the property, on February 26, 1896, came to a final settlement with the builder, Winfree, and paid him the sum of $1,900 in final satisfaction of his contract for the construction of the houses.

The original defendants to the bill of complaint were Almena B. Williams and William W. Winfree. But on February 20, 1896, the lien was released by an undertaking entered into by Mrs. Williams, as the owner of the property, with David T. Cissell and George C. Esher as sureties; and Cissel and Esher thereupon, by virtue of the statutes in reference to mechanics' liens, became parties to the proceedings.

The appellants, in their bill of complaint, alleged their claim and their right to a lien therefor; and the defendants substantially denied the right to a lien; and testimony was taken on both sides. The court below dismissed the bill of complaint; and from the decree of dismissal the present appeal has been prosecuted.

*Messrs. Padgett & Forrest* for the appellants.

*Mr. Andrew Wilson* and *Mr. Noel W. Barksdale* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

While the record now before us is not entirely clear as to the extra materials furnished by the appellants, and reference to an auditor may be required to establish specifically the amount of their claim, it does not seem to be seriously controverted that the appellants furnished all the materials in question substantially in accordance with their claim. The controversy in the case is, whether their contract to furnish these materials was with Winfree or with Brown; and whether, if it was with Winfree, it was of a character that could be enforced. For, if the contract of the appellant was with Brown, who was himself only a subcontractor, the appellants, as subcontractors of a subcontractor, as they would be in that case, are not entitled to a lien. *Leitch* v. *Hospital,* 6 App. D. C. 247; *Herrell* v. *Donovan,* 7 App. D. C.

336.   The existence of a contract between the appellants and Winfree is conceded; but it is claimed on behalf of the appellees to be only a contract of guaranty.   And it seems to be understood, also, that it was claimed by the appellees in the court below that the contract being unilateral was incapable of enforcement.   Apparently in accordance with those views was the decision of that court; but we find ourselves unable to accede to them.

The unilateral character of the contract or order of March 22, 1895, is of no consequence whatever in the present controversy.   The objection is one that may properly be made in the case of an executory contract, but not in the case of an executed one; and the contract in question is an executed contract.   It is well settled law that, when a defendant has received the consideration of a written agreement, it is no answer to a breach of such contract that the agreement does not bind the plaintiff.   *Storm* v. *United States,* 94 U. S. 76; *Richardson* v. *Hardwick,* 106 U. S. 252.   But this point, it may be proper to add, does not seem to be seriously, if at all, insisted upon in this court by the appellees.

The substantial contention on behalf of the appellees is, that the contract in the premises was between the appellants and Thomas Brown; that the credit given by the appellants was given to Brown, and that the contract of Winfree with the appellants was only that of guaranty or suretyship.   The evidence of contract is the order of March 22, 1895, and the fact of the acceptance thereof and the delivery of the materials thereunder by the appellants.   It is conceded that that there was no other contract than that evidenced by this order; and both the appellants and Brown explicitly repudiate the existence of any contract between themselves, and indeed prove conclusively that the appellants refused to give credit to Brown in the matter.   What is the nature then of the contractual relations evidenced by the order of March 22, 1895?

This question does not seem to be very difficult to

answer. When one person gives an order to a second person to deliver goods to a third, and such order stands alone and without explanatory circumstances of any kind, it is very clear that the contract in the case is between the first and second, that the credit is given by the second to the first, and that the third person is no more than a messenger or agent of the first person to receive the goods. This is the plain dictate of reason and common sense, and no elaboration of argument is required for its enforcement. And it necessarily follows from this primary rule or principle that, if one would seek to invalidate this inference, the burden of proof is upon him to show that something different was intended. How has that burden been borne in the present case by the appellees upon whom it is imposed? It is sufficient to say, in answer to the question, that they have wholly failed to show that the order in question was intended to mean anything different from that which it *prima facie* purports to mean—a request from Winfree to the appellants to furnish materials to him (Winfree) through the agency or instrumentality of Brown. The testimony of the appellees, even if it stood alone and uncontradicted, would scarcely be sufficient to sustain their contention; and we regard the vast preponderance of testimony to the contrary to be on the side of the appellants. In fact, we are disposed to regard the order of March 22, 1895, as wholly unaffected by the testimony on either side, and as justifying the natural inference to be drawn from it—that it was a contract primarily between the appellants and Winfree, and not a guaranty by the latter of a contract between the appellants and Brown. By the introduction in evidence of the order of March 22, 1895, the appellants virtually proved their *prima facie* case. After that, it was incumbent on the appellees to show, if they could, that the natural and ordinary inference from this order was not the one intended by the parties; and this, in our opinion, they have wholly failed to do.

But apart from this order, there is another consideration of serious import in the case. As already stated, Brown abandoned the work while it was in progress and almost in the midst of it; and Winfree thereupon took possession of the materials, which, according to his claim, must have been the property of Brown, converted them to his own use, employed another plumber to work them into the buildings; and all this with full knowledge that the appellants had not been paid for them, and, apparently, with the purpose on his own part not to pay for them. Now, we can not assume that he thereby intended to commit an act of spoliation, which would be little better than robbery, if his own present theory were correct. We prefer to think that he supposed that he was using his own property, and not that of Brown; property sold to himself and not to any one else by the appellants, and which he had a perfect right so to use. By such use of the property he distinctly affirmed the contract between himself and the appellants, and from such use we might be justified in inferring the existence of such a contract, even if there were no other proof of it. An implied contract might be presumed that would justify the action of the appellants.

We are entirely satisfied that, while there was, in the first instance, a contract between Winfree and Brown which covered the subject-matter of the claim of the appellants, yet the subsequent action of the parties eliminated that subject-matter from that contract, and made it the subject of a distinct and independent contract between the appellants and Winfree, evidenced by the order of March 22, 1895, by which the appellants were constituted subcontractors in immediate relation with the contractor Winfree, in consequence of which relation they become entitled to the lien which they now claim. Nor is this conclusion contrary to anything that was said in the case of *Herrell* v. *Donovan*, 7 App. D. C. 322, which, like the case of *Leitch* v. *Emergency Hospital*, 6 App. D. C. 247, was that of a subcon-

tractor of a subcontractor seeking to hold a lien, where there was nothing to show the existence of immediate contractual relations between him and the contractor. On the contrary, we said in that case what is entirely appropriate to the present. We said:

"Nor is there any question of novation, or of anything being taken out of the contract between Vaughn and Cozzens, and made the subject of contract between Vaughn and Herrell and Company. It was competent for the parties to make such an arrangement, if they thought proper; but the proof is not of any such arrangement, but of an entirely different one—an arrangement, in fact, wholly inconsistent with the theory of novation."

The supposititious case there mentioned is the actual case now before us. Here was something taken out of one contract and made the subject-matter of another.

Nor is there any injury done to any one by the conclusion here reached. It is quite evident that the appellants are justly entitled to compensation for the materials furnished by them; and that the owner of the property, or her agent, by whose action in the premises she must be affected, having money in his hands, which equitably and justly should, in part at least, have been applied to the satisfaction of the claim of the appellants, yet paid over that money to Winfree with full knowledge of the situation, of the existence of the notice of lien, and of the institution of this suit.

In view of what we have said, it follows that the decree of the Supreme Court of the District of Columbia in this cause must be reversed, with costs; and that the cause must be remanded to that court, with directions to enter a decree therein in accordance with this opinion, after such preliminary proceedings, if any should be deemed necessary, as may be proper to ascertain the amount justly due and payable to the appellants in the premises. *And it is so ordered.*