THOMAS v. WESTERN INDEMNITY CO.
(No. 889.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 21, 1918. Rehearing Denied
Dec. 12, 1918.)

CONTRACTS ⬡10(1)—CONSTRUCTION—UNILATERAL CONTRACTS.

Where an indemnity bond issued by plaintiff provided it should remain in force for one year, unless canceled by plaintiff, the contract *held* unilateral, and terminable at the will of either party, being enforceable only for the period for which plaintiff had received the premium.

Higgins, J., dissenting.

Appeal from El Paso County Court, at Law; W. P. Brady, Judge.

Action by the Western Indemnity Company against W. N. Thomas. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Rufus B. Daniel and Del W. Harrington, both of El Paso, for appellant.

Ware & Norcop, C. H. Kirkland, and W. M. Peticolas, all of El Paso, for appellee.

Statement of the Case.

HARPER, C. J. Through its agent in El Paso, Tex., the Western Indemnity Company was engaged in the business of executing bonds as surety for a moneyed consideration. Appellant, W. N. Thomas, being desirous of operating a jitney motor bus in the city of El Paso, and before doing so it being required of him by city ordinance to file a bond, he approached the appellee's agent with a view of getting the indemnity company to execute the bond as surety, whereupon its said agent gave to Thomas an application blank to be filled and signed by him.

The parts of this application which appertain to the points at issue are:

"Whereas, the undersigned was on the 1st day of April, 1917, granted a permit by the city of El Paso, Tex., to operate a motor bus within the limits of the city * * * in compliance with the terms of an ordinance, * * * and before a license can be issued there must be filed with the city clerk of the city of El Paso a bond in the sum of $1,000: Now, therefore, application is hereby made to the Western Indemnity Company to execute said bond as surety, which bond, if executed, shall continue in force and effect for one year from the date thereof, unless canceled by the Western Indemnity Company. * * * The applicant will pay the company $150 per year, payable in 12 equal installments, monthly in advance, and said entire premium shall be paid in any and every event, save, only, if the Western Indemnity Company shall itself cancel said bond, in which event there shall be no premium liability against the applicant for the remaining term of said year from the time of said cancellation. The Western Indemnity Company shall have the right at any time, at its option, to cancel its bond and to withdraw therefrom as surety, upon releasing the applicant from any further liability for premium."

Pursuant to this application being signed by Thomas and presented to the agent of the company, the required bond was executed, as required by the city ordinance, by the company. The consideration to the company for so signing as surety the note sued on was executed by Thomas. It contains the following stipulations:

"For value received * * * I promise to pay to Western Indemnity Company * * * the sum of $150. * * * This note is payable as follows: In monthly installments of $12.50 each; the first of said installments being due and payable one month after date, and the remainder of such installments being due and payable one on the 1st day of each month thereafter, etc., and the failure to pay any of the installments shall mature the entire amount of the note."

Dated February 13, 1917.

Thomas paid on the note $31.25, being for the balance of the month of February and all of March, and on the 1st of April notified the company's agent to cancel the bond, and filed another bond with the city, with different surety.

This suit was filed by the Indemnity Company May 28, 1917, for the balance due upon the face of the note, interest, and attorney's fees, etc., and for foreclosure of chattel mortgage on an automobile. Thomas answered, first, that the contract, for which the note evidenced the consideration, was a contract of indemnity from month to month, that it had been terminated on the 1st day of April by notice, and by filing a new bond with the city, with a different surety, and that therefore there was no consideration for the part of the note sued on; second, that the contract was null and void as to either party beyond the period of 30 days, because it lacks mutuality, is unilateral, etc., and subject to be terminated by either party.

Trial without a jury, and judgment rendered for the Indemnity Company for the balance of the note, interest, and attorney's fees, from which Thomas has appealed.

Opinion.

The question presented by the assignments is: Did the trial court "err in not holding

as a matter of law that Thomas was not bound for the payment of the balance due, according to the face of the note sued on because the contract was unilateral?" Construing this contract as a whole, as we are required to do, we have concluded that the clause in the contract providing that the "bond shall continue in force for one year unless canceled by the Western Indemnity Company, makes it terminable at the will of either party, and therefore unenforceable for any period except that for which the company had received the money. Appellee urges that when, in response to the application, the company signed the bond, it had done all it was required to do under the contract, and that it thereby became executed, the consideration perfected, and that payment for that reason can be enforced. If the act of signing the bond as surety had been all the company was to do under the contract, this well-settled principle of law would support its judgment. But it will be noted that by the contract relied upon the company binds itself to keep the bond in force and effect for one year, unless it chooses to cancel it, and there were ten months of the time yet to elapse before all that was to be done could have been done; so it is clear that the principle cannot be applied to the facts of this case. If the company had by its contract bound itself to keep this bond in force for one year in all events, then even a part payment by Thomas would have perfected the consideration. M., K. & T. Ry. Co. v. Smith, 98 Tex. 47, 81 S. W. 22, 66 L. R. A. 741, 107 Am. St. Rep. 607, 4 Ann. Cas. 644.

The writer is of the opinion that, construing the two writings together, the application and the note, it is clear that the company only bound itself to keep the bond alive or in force for one month at a time, and from month to month only as Thomas paid in advance the monthly charge of $12.50 per month. Justice WALTHAL does not concur in the latter proposition.

We are of the further opinion that, by the clause in the contract reserving to the company the right to at any time cancel the bond, the contract was unilateral, and terminable at the will of either party, and that by Thomas giving notice as he did, and filing another bond with the city, the contract was terminated, and the Indemnity Company could and should have withdrawn from the bond; therefore the indemnity company has no cause of action for the unpaid portion of the note.

Reversed and rendered.

HIGGINS, J. (dissenting). On February 12, 1917, appellant, Thomas, applied to the permit clerk of the city of El Paso for a license to operate a motor bus within the city over route No. 1, subject to the provisions of a city ordinance approved May 28, 1915. In order to obtain the license, it appears to have been necessary for Thomas to give a bond in the sum of $1,000, payable to the mayor of the city, for the use and benefit of all persons in whose favor a cause of action might arise out of the negligent operation of the bus.

Upon a printed form, furnished by appellee, Thomas applied to appellee to make this bond. Those portions of this application material to a consideration of the question presented read:

"Application to Western Indemnity Company for Bond.

"Whereas, the undersigned was on the 1st day of April, 1917, granted a permit by the city council of the city of El Paso to operate a motor bus within the limits of the city of El Paso, Tex., in compliance with the terms of an ordinance approved the 28th day of May, 1915, and its amendments, and before a license can be issued there must be filed with the city clerk of the city of El Paso a bond in the sum of one thousand ($1,000.00) dollars:

"Now, therefore, application is hereby made to the Western Indemnity Company, a corporation, to execute said bond as surety, which bond, if executed, shall continue in force and effect for one (1) year from the date hereof unless canceled by the Western Indemnity Company under the provisions hereinafter set out. * * *

"As a consideration for the execution of said bond, it is agreed by the applicant as follows:

"I. That the applicant and driver of said car will obey the traffic ordinances of the city of El Paso.

"II. That the applicant will pay the Western Indemnity Company the sum of one hundred fifty ($150.00) dollars per year, payable in twelve (12) equal installments monthly in advance, and said entire premium shall be paid in any and every event, save only if the Western Indemnity Company shall itself cancel said bond, in which event there shall be no premium liability against the applicant for the remaining term of said year from the time of said cancellation.

"III. The Western Indemnity Company shall have the right at any time, at its option, to cancel its bond and to withdraw therefrom as surety, upon releasing the applicant from any further liability for premium."

To cover the obligation assumed by Thomas in the second paragraph of the application, he gave the Indemnity Company his note in the sum of $150, dated February 13, 1918, payable in the monthly installments of $12.-50 each; the first installment being payable in one month after date, and the subsequent installments on the 1st of each month thereafter. The bond requested was made by the appellee as surety, of date February 13, 1917, filed with the city clerk, and the license was thereupon issued to Thomas by the city. The bond contains this provision:

"The surety herein may withdraw herefrom by giving written notice of its intention so to do to the mayor of the city of El Paso, Tex., and such notice shall have the effect of relieving such surety from any further liability hereunder after the expiration of 24 hours from the service of such written notice upon the said mayor of the city of El Paso, and return or a tender to return to the said principal the unearned portion of the premium paid herein calculated at pro rata rate."

On April 1, 1917, Thomas applied to the permit clerk for a license to operate another motor bus in the city over route 6. Upon a form the same as indicated above, and furnished by appellee, Thomas applied to appellee to make the necessary bond. To cover the obligation assumed by Thomas in the second paragraph of the application, he gave appellee his note in the sum of $150, dated April 1, 1917, and payable in monthly installments, like the note first described. The bond to cover route 6 was made by appellee as surety, was dated April 1, 1917, filed with the city clerk, and license was thereupon issued by the city. The bond is in same form as the one covering route 1. Thomas operated under these bonds until May 1, 1917, and paid the installments due to that date. He then notified appellee of his refusal to pay any further installments of his notes. On the same day he made new applications to the permit clerk for licenses to operate the busses over routes 1 and 6, and filed new bonds of like tenor and effect as the ones previously filed. These last bonds were executed by the Maryland Casualty Company as surety.

The notes above described contained an accelerated maturity clause, providing that failure to pay any installment when due should, at the option of the holder, mature the entire amount of the note.

Appellee filed this suit to recover the entire principal amount of the notes, and recovered judgment as sought. The record in this case discloses that the appellee has never exercised its option to withdraw from the bonds which it executed. At the date of the trial they were still on file with the proper city official, and there is nothing to indicate that the city has ever released appellee from the bonds which it made for Thomas.

It is possibly inferable from the testimony of the city clerk, Mr. Dawson, that the bonds made by the Maryland Casualty Company have been filed with him; but there is an absolute want of evidence to show that the city has ever taken any action to authorize a substitution of bonds, or issued any license to Thomas based upon the new bonds. Thomas at the date of trial was still operating his motor busses.

Upon the facts indicated, I dissent from the conclusion reached by the majority. The entire contract between Thomas and appellee, whereby the latter undertook to make the bonds required by the city, is evidenced by the notes and applications of Thomas. In their inception, it is very clear they were unilateral, because appellee obligated itself to do nothing; but it is well settled that, where one makes a promise in consideration of some act to be performed by another, and the latter does the act, the contract is not voidable for want of mutuality. The promisor is liable, and his promise can be specifically enforced against him, though the promisee did not, at the time of the promise, engage to do the act; for, upon the performance of the act by the promisee, the contract becomes clothed with a valid consideration, which relates back and renders the promise obligatory. 6 R. C. L. subject "Contracts," §§ 94–96; 9 Cyc. 329, 330, 333, 334; 1 Parsons on Contracts (9th Ed.) p. 451; Taber v. Dallas County, 101 Tex. 250, 106 S. W. 332; Rose v. Ry. Co., 31 Tex. 60; Storm & Schrader v. United States, 94 U. S. 82, 24 L. Ed. 45; Griffin v. Bell, 202 S. W. at page 1036; Morse v. Bellows, 7 N. H. 549, 28 Am. Dec. 372.

As I construe the applications, Thomas agreed to pay appellee $150 for each bond, if the latter would execute the bonds required by the city. The option to cancel is a part of the consideration for the execution of the bonds. The applications plainly say:

"As a consideration for the execution of said bond, it is agreed by the applicant as follows: * * *

"II. That the applicant will pay the Western Indemnity Company the sum of one hundred fifty ($150.00) dollars per year, payable in twelve (12) equal installments monthly in advance, and said entire premium shall be paid in any and every event, save only if the Western Indemnity Company shall itself cancel said bond, in which event there shall be no premium liability against the applicant for the remaining term of said year from the time of said cancellation.

"III. The Western Indemnity Company shall have the right at any time, at its option, to cancel its bond and to withdraw therefrom as surety, upon releasing the applicant from any further liability for premium."

Appellee did execute the bonds. By so doing the hitherto unilateral contracts became clothed with a valid consideration, mutuality was established, and they became valid contracts. Having become valid, they lost that feature peculiar to unilateral contracts, namely, the option of either party to refuse to abide by or perform the contract. The majority opinion holds that the option reserving to the company the right to cancel the bonds made the contracts unilateral. As I have attempted to show, the execution of the bonds supplied a consideration theretofore wanting, and, as I understand the authorities, an option of this nature in favor of one of the parties to a contract, supported by a consideration, is valid, and does not render the contract voidable for want of mutuality. This was expressly held by Judge Stayton in Railway Co. v. Scott, 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758. In that case a contract of employment was made; the railway company agreeing to employ Scott in consideration of a compromise accepted by him of a claim for damages against the company. The suit was by Scott to recover for a breach of the contract to employ him. The contract alleged was that the railway company "would employ petitioner [Scott] for whatever length of time your petitioner might desire to retain such employment." The company requested a peremptory charge in its favor upon the theory

that the contract was wanting in mutuality. The court held that the charge was properly refused. The court held that it was optional with Scott whether or not he would serve appellant, and that by the terms of the agreement he had the right to fix the period he would serve, if he willed to serve at all. It was further held that the right to this option could not be upheld on the theory of reciprocal promises as a consideration, but that the acceptance of the compromise afforded a consideration to support the option. The court held, however, that the contract was not sufficiently certain as to time, but could be made certain if Scott elected to fix the period of his service by offering to serve for any certain period, or any period that could be made certain. This case distinctly upholds the validity of an option based upon an executed consideration. Railway Co. v. Smith, 98 Tex. 47, 81 S. W. 22, 66 L. R. A. 741, 107 Am. St. Rep. 607, 4 Ann. Cas. 644, plainly recognizes that a contract wanting in mutuality at its inception will become binding by the promisee performing the act which was to be done, but which he had not bound himself to do. The court held that the promise to re-employ an injured servant, under consideration in that case, was too indefinite to furnish a consideration for his release of a claim for damages.

Now, in the case at bar, appellant does not contend that the contract between the parties is in any wise indefinite, nor can it be so considered. When appellee executed the bonds, it did all that it was requested to do; a contract arose upon an executed consideration, and by that act appellee became entitled to demand of Thomas that he comply with his promise to pay (Anson on Contracts, 116; Bishop on Contracts, 37; Heisch v. Adams, 81 Tex. 94, 16 S. W. 790), and also became entitled to the option of cancellation upon the conditions prescribed in the contract. The only condition attached to the right of cancellation was that appellee release Thomas from liability for any premium from the date of cancellation. This provision for release from unearned premiums fully protected Thomas from paying for something that appellee did not earn. That this option did not destroy the mutuality of the contract, it seems to the writer, is conclusively established by the opinion in Taber v. Dallas County, supra, wherein Judge Brown says:

"But it is said that by the terms of the contract Taber could terminate it at his option by failing to pay interest for 60 days; hence his promise to pay is not a valuable consideration. We are not prepared to hold that Taber could terminate the contract by refusing to pay the interest. The question is not before us; but, admitting that to be a correct interpretation of the terms used, it does not destroy the mutuality of the contract, but is simply an option which the parties contracted for and which may or may not be exercised by Taber. 9 Cyc. 333;

Waterman v. Waterman [C. C.] 27 Fed. 829; Storm v. U. S., 94 U. S. 76 [24 L. Ed. 42]."

In addition to the authorities cited by Judge Brown, see, also, Railway Co. v. Jackson, 29 Tex. Civ. App. 342, 69 S. W. 91; Hayes v. O'Brien, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555; Elliott on Contracts (1913 Ed.) § 231; 9 Cyc. 334; 6 R. C. L. subject "Contracts," § 94.

The writer therefore concludes that the execution of the bonds furnishes a consideration for the promise to pay by Thomas, and that the option in appellee's favor to withdraw from its contract of suretyship at any time upon releasing Thomas from liability for unearned premiums does not destroy the mutuality of the contract.

I think the case should be affirmed.