## W. N. THOMAS v. WESTERN INDEMNITY COMPANY.

### No. 3182.   Decided December 6, 1922

(246 S. W., 345.)

1.—Contract—Mutuality—Option.

A surety company furnishing bond, being authorized by statute to withdraw from and cancel same (Vernon's Civ. Stats., art. 4933), may insert in its bond a provision for exercising such right at its discretion on return of the consideration received and unearned at the time of such cancellation. (pp. 136, 137).

2.—Same—Indemnity Bond.

Where the insured for whose fidelity for one year the Indemnity Company had given bond with right to terminate liability thereon at its option during the specified term, discontinued the monthly payments for which he had given his note to the insurer as consideration for the latter's undertaking, and endeavored to substitute for the insurer's bond that of another company, it is *held*:

(1)   Such contract, though terminable at the option of one party by its terms, was not thereby rendered terminable by the other.   (p. 137).

(2)   The reservation of such optional right by the surety did not render the contract unilateral and so terminable by either, nor require the surety to withdraw from its bond on the refusal of the insured to continue monthly payments therefor as undertaken in his note given as consideration for the surety's bond.   (pp. 137, 138).

(3)   Having given his note calling for monthly payments to the surety as consideration for making such bond, the promissor, though his default in one of such payments authorized the surety to withdraw from the bond and release him from payment of further installments, remained liable for them on his note when the surety declined to exercise such option. . (pp. 137, 138).

Question certified from the Court of Civil Appeals for the Eighth District, in an appeal from El Paso County.

The questions certified having been referred by the Supreme Court to the Commission of Appeals, Section A, for its opinion and same having been approved and adopted as its own, the answers are here certified to the Court of Civil Appeals.

*Rufus B. Daniel* and *Del. W. Harrington,* for appellant.

When the appellee intended to and did leave it optional with itself whether it would bond appellant for one day or three hundred sixty-five days, the law leaves it optional with appellant to take appellee's bond for one day or three hundred sixty-five days.   H. & T. C. R. Co. v. Mitchell, 38 Texas, 85-95; Mutual Film Corp. v. Morris & Daniel, 184 S. W., 1060-1061; Berry v. Frisbie, 86 S. W., 558-559; Rutland Marble Co. v. Ripley, 10 Wall., 339, 19 L. Ed., 955, 962; Velie Motor Car Co. v. Kopmeier Motor Car Co. 194 Fed., 324, 329.

Where a municipal corporation requires a motor bus operator to furnish an indemnity bond, with a surety, before operating a certain vehicle, then any change of relationship between such corporation and such motor bus operator concerning such certain vehicle

releases such surety from future liability on such indemnity bond. Prairie State Natl. Bank v. United States, 164 U. S., 238.

*Ware & Norcap* and *C. H. Kirkland*, for appellee.

The stipulation of the applications (notes and mortgages) executed by appellant and acted on by appellee, giving appellee an option, once the bond was executed, to cancel it upon condition that such act on its part should operate to release appellant from the duty to pay the installments to come due after such cancellation, did not render the contract void for want of mutuality, being an option appellant granted to appellee by the terms of his application. Railway Co. v. Jackson, 69 S. W., 89; Taber v. Dallas County, 101 Texas, 241; Storm & Shrader v. United States, 94 U. S., 82; Elliott on Contracts, paragraph 231; Printing Co. v. Graphite Co., 150 Mo. App., 383, 130 S. W., 836.

The filing of another bond by appellant with a different surety, without securing a release of the prior bond executed by appellee as surety, in no way affected the rights of the assured to sue upon and recover under such prior bond. Frois v. Mayfield, 33 Texas, 801; Moore v. Hanscom, 103 S. W., 672; Rush v. Bishop, 60 Texas 178; 5 Cyc., 816.

MR. JUDGE RANDOLPH delivered the opinion of the Commission of Appeals, Section A.

The Court of Civil Appeals for the Eighth District have certified the following questions to the Supreme Court and same have been assigned to this section of the Commission for consideration.

The certified statement of the case and questions is as follows:

"On February 12, 1917, appellant, Thomas, applied to the Permit Clerk of the City of El Paso for a license to operate a Motor Bus within the city over Route No. 1, subject to the provisions of a City ordinance, approved May 28, 1915. In order to obtain the license, it was necessary for Thomas to give a bond in the sum of $1,000, payable to the Mayor of the City for the use and benefit of all persons in whose favor a cause of action might arise out of the negligent operation of the bus.

Upon a printed form furnished by appellee, Thomas applied to appellee to make this bond. The application was signed by Thomas. Those portions of the application material to a consideration of the question presented read:

'APPLICATION TO WESTERN INDEMNITY COMPANY FOR BOND.

WHEREAS, the undersigned was on the 1st day of April, 1917, granted a permit by the City Council of the City of El Paso, to operate a motor bus within the limits of the City of El Paso, Texas,

in compliance with the terms of an ordinance approved the 28th day of May, 1915, and its amendments, and before a license can be issued there must be filed with the City Clerk of the City of El Paso a bond in the sum of One Thousand ($1,000) Dollars;

Now, therefore, application is hereby made to the Western Indemnity Company, a corporation, to execute said bond as surety, which bond, if executed, shall continue in force and effect for one (1) year from the date hereof unless cancelled by the Western Indemnity Company under the provisions hereinafter set out. . . .

As a consideration for the execution of said bond, it is agreed by the applicant as follows:

### I.

That the applicant and driver of said car will obey the traffic ordinances of the City of El Paso.

### II.

. That the applicant will pay the Western Indemnity Company the sum of One Hundred Fifty ($150) Dollars per year, payable in twelve (12) equal installments monthly in advance, and said entire premium shall be paid in any and every event, save, only if the Western Indemnity Company shall, itself, cancel said bond, in which event there shall be no premium liability against the applicant for the remaining term of said year from the time of said cancellation.

### III.

The Western Indemnity Company shall have the right at any time at its option, to cancel its bond and to withdraw therefrom as surety upon releasing the applicant from any further liability from premium.'

To cover the obligation assumed by Thomas in the second paragraph of the application, he gave the Indemnity Company the following note:

'El Paso, Texas. Feb. 13, 1917.

$150.00

FOR VALUE RECEIVED, and waiving grace, protest and suit, —promise to pay to Western Indemnity Co., or order, at the City of El Paso, Texas, the sum of One Hundred and Fifty Dollars ($150) with interest at the rate of 8 per cent annum from date, the interest payable monthly as the same accrues, past due interest to bear interest from maturity at the rate of ten per cent per annum. This note is payable as follows: In monthly installments of Twelve Dollars and Fifty Cents ($12.50) each, the first of said installments being due and payable one month after date and the remainder of such installments being due and payable one on the first day of each month

thereafter until the aggregate of such payments shall be sufficient to discharge the principal of this note.

This note is secured by Chattel Mortgage on Automobile, make Ford, Model 1917, Engine No. 1630685, Bus 19, County License 8734.

It is expressly agreed and understood that failure to pay any one of the installments of principal or interest on this note when due, shall, at the option of the holder thereof, mature the entire amount of this note. It is further expressly agreed and understood that if this note is placed in the hands of an attorney for collection, or if the same is collected by suit or in the Probate Court, then 10 per cent on the amount of principal and interest then due shall be added as attorney's fees.

(Signed) W. N. THOMAS.'

The bond requested was made by the appellee as surety, of date February 13, 1917, filed with the City Clerk and the license was thereupon issued to Thomas by the city. The bond contains this provision:

'The surety herein may withdraw herefrom by giving written notice of its intention so to do to the Mayor of the city of El Paso, Texas, and such notice shall have the effect of relieving such surety from any further liability hereunder after the expiration of twenty-four hours from the service of such written notice upon the said Mayor of the city of El Paso, and return or a tender to return to the said principal the unearned portion of the premium paid herein calculated at pro rata rate.'

On April 1, 1917, Thomas applied to the Permit Clerk for a license to operate another Motor Bus in the City over Route 6. Upon a form the same as indicated above and furnished by appellee, Thomas, applied to appellee to make the necessary bond. This application was signed by Thomas. To cover the obligation assumed by Thomas in the second paragraph of the application, he gave appellee his note in like form and substance as to the one copied above, dated April 1, 1917. The bond to cover route 6 was made by appellee as surety; was dated April 1, 1917, filed with the City Clerk and license was thereupon issued by the city. The bond is in same form as the one covering Route 1. Thomas operated under these bonds until May 1, 1917, and paid the installments due to that date. He then notified appellee of his refusal to pay any further installments of his notes and notified their agent to cancel the bonds. On the same day he made new applications to the Permit Clerk for licenses to operate the busses over routes 1 and 6 and filed new bonds of like tenor and effect as the ones previously filed. These last bonds were executed by the Maryland Casualty Company as surety.

Thomas gave verbal notice of filing a new bond in lieu of plaintiff's and did file one with the City Clerk.

Appellee filed this suit May 28, 1918, to recover the entire unpaid principal amount of the notes and recovered judgment as sought. The record discloses that the appellee has never exercised its option to withdraw from the bonds which it executed. At the date of the trial they were still on file with the proper city official and there is nothing to indicate that the city has every released appellee from the bonds which it made for Thomas. There is a want of evidence to show that the city has ever taken any action to authorize a substitution of bonds or issued any license to Thomas based upon the new bonds, except to file the new bond of the Maryland Casualty Company. Thomas at the date of trial was still operating his motor busses.

The questions presented by this appeal are of importance, not without doubt with the members of this court. There are a great many cases pending, awaiting the final adjudication of the questions by the appellate courts, and our jurisdiction being final in all of them.

For these reasons we deem it advisable to certify to your honorable court the following questions, as provided in Article 1619, Revised Civil Statutes:

Question 1. Were the contracts terminable at the will of either party and therefore unenforceable for any period except that for which appellee had received the money?

Question 2. Did the clause in the contracts reserving to the company the right to at any time cancel the bonds render the contracts unilateral and terminable at the will of either party, so that Thomas by giving the notice he did and filing other bonds with the city, thereby terminated the contracts and the company could and should have withdrawn from the bonds and it therefore has no cause of action for the unpaid portion of the notes?

Question 3. Does the fact that appellee executed the bonds and never withdrew therefrom render appellant liable for the unpaid installments of the notes sued upon, notwithstanding the other facts shown?"

The reservation in the contract and bond of the company's right to cancel the bond, does not make it terminable at the will of either party and does not make it unilateral. Our statutes, while they provide for the execution of security and indemnity bonds by such corporations as the appellee in this case, also, by express enactment, give the right to such corporations to cancel such bonds and to withdraw from same as to certain fiduciary suretyships. Article 4933, Vernon's Civil Statutes provides as follows:

"Any surety company may withdraw from the bond of any trustee, guardian, assignee, receiver, executor, administrator or other fiduciary, in like manner and by like proceeding as is now provided by law in the case of individual sureties."

Article 4938 provides that where a bond of guaranty or indemnity is cancelled by a surety company it shall furnish to such person bonded a full statement in writing of the facts on which the action of the corporation is based.

Such being the statutory right of the surety companies as to the character of suretyships named in the statute, by analogy the surety would have the right to expressly contract for that right and to cancel and withdraw from the bond when so agreed to by both parties, The statutes in the case of guardians, executors, and administrators provide a method for the surety to be relieved of its liability on bonds, but in cases such as the case at bar no statutory method is provided whereby such release can be had. The surety should be permitted to contract and by such contract provide a method of release, and in this case such method was so provided.

In the case of Storm v. United States, 94 U. S., (4 Otto) 76, 24 L. Ed., 42, suit was brought against the United States by Storm and Shrader on a written contract with the Assistant Quartermaster of the army, acting in behalf of the United States, to deliver at several places mentioned in the contract certain amounts of forage and straw.

The Quartermaster refused to pay certain amounts claimed to be. due and owing to the contractors and suit was brought thereon. In discussing the question of mutuality of the contract wherein it was provided that the contract ''may be terminated at such time as the Quartermaster-General may direct,'' the defendants objected to the admissibility of the bond insisting that it was a *nudum pactum;* that it appears on its face that it might have been terminated at any time at the election of the plaintiffs; that it is not mutually binding and that inasmuch as it is wanting in that respect, it is without consideration and is inoperative and void and announcing their conclusion the court says:

''Where the defendant has actually received the consideration of a written agreement, it is no answer to an action brought against him for a breach of his covenants in the same to say, that the agreement did not bind the plaintiff to perform the promises on his part therein contained, provided it appears that the promises in question have, in fact, been performed in good faith and without prejudice to the defendant.'' . . .

In the case at bar the company had executed its bond and filed same with the municipal authorities of El Paso. The fact that it reserved the right to cancel the bond was the reservation of an option based upon a sufficient consideration and in no wise affected the legality of the contract and bond.

In the case of Taber v. Dallas County, 101 Texas, 250, 106 S. W., 335; it is said by the Supreme Court:

''Counsel for the county claim that the contract with Taber is

void for want of mutuality. The promise to convey the land to Taber upon the payment of the specified sum and interest and Taber's promise to pay the agreed price are mutual promises, the one a valuable consideration for the other, and mutuality is thereby created. (Cherry v. Smith, 3 Humph, 19; 9 Cyc., 333, par. V, note 35.) But it is said that by the terms of the contract Taber could terminate it at his option by failing to pay interest for sixty days, hence his promise to pay is not a valuable consideration. We are not prepared to hold that Taber could terminate the contract by refusing to pay the interest, the question is not before us, but, admitting that to be a correct interpretation of the terms used, it does not destroy the mutuality of the contract, but is simply an option which the parties contracted for and which may or may not be exercised by Taber. (9 Cyc. 333; Waterman v. Waterman, 27 Fed. Rep., 829; Storm v. United States, 94 U. S. 76.)''

The fact that the $150 note given by Thomas to the company was payable in installments does not terminate the contract at the end of any particular term for which payment was made, but the contract is a continuing contract for the period of one year, unless the company had exercised its option to cancel the bond, which it had not done.

In the case of Jones v. Gammel-Statsman Pub. Co., 100 Texas, 331, 8 L. R. A. (N. S.), 1197, 99 S. W., 703, in which suit had been brought upon a contract with provision for its performance in installments at different times our Supreme Court holds:

''This was a continuing contract, and a failure of the Gammel Book Co., and others connected with it, to perform any one of the things contracted for by the terms of the contract, was a partial breach thereof, and constituted a separate and independent cause of action, for each of which an action might have been instituted. (24 Am. & Eng. Ency. Law, p. 790 (bb), p. 791 (dd); Cromwell v. County of Sac, 94 U. S., 351;; Howe v. Harding, 84 Texas, 74; Menges v. Milton Piano Co., 70 S. W. Rep., 250; Davis v. Brown, 36 S. W. Rep., 540.) If the entire contract had been broken by the one act but one action could have been maintained therefor.''

We therefore answer the questions numbers one and two in the negative and as to the third question we answer:—appellee having executed the bonds and having filed same with the proper authorities, and never having exercised its option of withdrawing from same, appellant is liable for the unpaid installments of the notes sued on and recommend that these answers be approved and be so returned to the Court of Civil Appeals.

By The Supreme Court.

The opinion of the Commission of appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton, Chief Justice.*