### CHARLES E. TRAVIS V. FRANCIS T. DUFFAU.

The breach of a *nudum pactum* cannot inflict an injury capable of legal redress; nor, it seems, become the basis of a charge of fraud. But quere, as to the latter proposition?

Where a draft on the agent of the drawer is payable generally, and the drawer would claim a benefit from a cotemporaneous agreement that it should be accepted payable out of the first money of the drawer, which should come to the hands of the drawee (it was not clear whether it had not been so accepted, or whether the payee had not refused to present it for such acceptance); it was said that the drawer ought to show at least that the receipt of such acceptance would not have been equivalent to an indefinite postponement of the payment of the draft.

Where the defendant had sued the plaintiff by publication, in a Justice's Court, and the plaintiff's agent, seeing the advertisement, went to the defendant to see about it, and the defendant promised to dismiss the suit, but failed to do so, and took judgment, and caused execution to be issued, upon which a tract of land, the property of the plaintiff, alleged to be worth $5,000, was sold to a third person, without notice, for $150; and the plaintiff or his agent did not know of the judgment until too late to prevent the sale by legal process or payment of the money; it was held that if it were admitted that the defendant was liable for direct damage resulting from his failure to dismiss the suit, yet the loss of the tract of land was a remote consequence (if a consequence at all of such failure,) for which the defendant was not responsible. And see the allegations of fraud.

It would seem that a Sheriff may levy upon and sell so much of a tract of land as shall be sufficient to discharge the execution.

Appeal from Travis. Tried below before the Hon. Thomas H. DuVal.

The petition alleged as follows: That on or about the 21st day of April, 1855, your petitioner and the said defendant Duffau had a settlement of their matters then outstanding, of all accounts, judgments, claims and demands, and that upon such settlement your petitioner was debtor to the said defendant in the sum of sixty-three $\frac{40}{100}$ dollars; that thereupon your petitioner then executed and delivered to the said defendant his bill of exchange drawn upon M. C. Hamilton, who was then acting as the agent of your petitioner, for the amount above stated, with the

full understanding that said Hamilton had not any money in his hands out of which the said claim was to be or could be satisfied, and the same was delivered with the full understanding that the said Hamilton would accept the same to be paid out of the first money that should come to his hands as the agent of petitioner, or out of any of the avails of the effects of your petitioner, then under the control or in the possession of the said Hamilton. Said bill of exchange was in the words and figures following, to wit:—

$63.40.   M. C. Hamilton, Esq.   Dr. Sir:  Please pay to F. T. Duffau of Austin, or his order, sixty-three $\frac{40}{100}$ dollars, with interest from date, and much oblige your ob'd't s'v't.     Austin, April 21, 1855.                          CHAS. E TRAVIS.

Petitioner alleges that at the time of the delivery of said bill of exchange or order, it was understood and agreed that the same was to be presented to the said Hamilton, and would receive the conditional acceptance or qualified acceptance above specified. Petitioner alleges the readiness of the said Hamilton to accept the said order or bill of exchange so drawn upon him, and a readiness on his part to pay the same, as was agreed between your petitioner and the said defendant, out of the means of petitioner, as soon as the same or any part thereof could be made available; and petitioner alleges the constant readiness on his part, and on the part of said Hamilton, to carry out the understanding to the letter, up to the time of the commencement of this suit.

Petitioner alleges that the said defendant never did present said order to said Hamilton for acceptance, but fraudulently neglected so to do; and with intent to defraud, harass and injure your petitioner, did, on the 30th day of July, 1855, go before one J. T. Graves, a Justice of the Peace then acting in the city of Austin, and for the purpose of instituting suit against your petitioner, and for the purpose of causing petitioner to be cited by publication to appear before said Justice, then and there made oath that your petitioner was at that time absent from this State, or was a transient person, so that the ordinary process of law could not be served upon your petitioner; whereupon the said Justice caused your petitioner to be cited by publication in the *Texas State Times*, a newspaper published in said Travis county. Petitioner alleges that the said order above set forth formed the only cause of action that said Duffau had against your petitioner

Travis v. Duffau.

in said suit; that after publication, such proceedings were had as brought on for trial the said cause before said Justice on the 6th day of October, 1855, at which time judgment by default was entered by said Justice against your petitioner and in favor of said Duffau, for the sum of $65 22, and for all costs of said suit.

Petitioner alleges, that after the rendition of said judgment, to wit, on the 17th day of Oct., 1855, execution issued on said judgment; that on the 14th day of November, 1855, said execution was returned unsatisfied; that on the 13th day of November, 1855, an alias execution issued to the Sheriff of Wharton county, Texas, and was sent to him, who received the same on the 21st day of November, 1855; and said Sheriff, on the 7th day of December, 1855, levied said execution on the interest of your petitioner in and to one-half of east half of a league of land in Wharton county, eight or ten miles below the town of Wharton; said land adjoins the Bingham league on the west, and on the east it adjoins the Castleman league. Petitioner alleges that the Sheriff of said county, after notice posted up as required by law, of such sale, offered the said land for sale at public auction on the first Tuesday in January, 1856, and G. W. Hooker being the highest and best bidder therefor, the same was struck off to him; and the said Sheriff, R. E. Davis, made, executed and delivered to said Hooker a deed therefor; he, the said Hooker, paying therefor the sum of $150; and petitioner alleges that for aught he knows to the contrary, and he therefore charges that said Hooker is an innocent purchaser, and can hold the land as against petitioner. Petitioner alleges that he was the owner of one-half of the land so as aforesaid levied upon and sold, and that there were 1107 acres, and that the same is and was at the date of the sale aforesaid of the value of five dollars per acre, and that he is deprived thereof by reason of the judgment and sale aforesaid, and that the said interest which he had and held was reasonably worth the sum of ten thousand dollars, and that he has been damaged in that amount; all of which matters will more fully appear on inspection of the proceedings in the said Justice's Court, the papers, executions, judgment and Sheriff's deed to said land; to all of which petitioner begs leave to refer upon the trial of this cause, to show more fully.

Petitioner alleges that said Duffau fraudulently and with intent to defraud your petitioner, commenced said suit against your petitioner without presenting said order to said Hamilton for

acceptance; and that after the commencement of said suit before the said Justice Graves, the said M. C. Hamilton, who was still your petitioner's agent, ascertained that said Duffau had brought suit upon said order; that thereupon said Hamilton applied to said Duffau, and requested him to discontinue said suit which he had instituted against your petitioner before said Justice, and let the amount be paid as was agreed; whereupon said Duffau faithfully undertook and promised so to do, and to cause all proceedings to be stopped and the same discontinued; said Hamilton then assuring said Duffau that he should defend the said cause unless he would discontinue the same.

Petitioner alleges that after said order had been drawn upon said Hamilton, he, said Hamilton, called upon said Duffau to present said order, and he would accept the same in accordance with the understanding; that he so called upon said Duffau both before and after the commencement of the suit before said Justice, and said Duffau promised and agreed so to do, but never did, but wholly neglected and refused so to do.

Petitioner further alleges that matters stood in this manner for a few days, when said Hamilton ascertained that the said suit had not been discontinued; and thereupon said Hamilton, on behalf of petitioner, again applied to said Duffau to have the said suit dismissed; whereupon said Duffau assured said Hamilton that he had forgotten to have the same done, but that he, said Duffau, would go immediately to said Justice and have the said suit dismissed, and would give it immediate attention. Petitioner alleges that his said agent, relying upon the faithful promises of the said Duffau in the premises, and believing that said Duffau would dismiss said suit, paid no more attention to the said suit. Petitioner alleges that said Duffau, in utter disregard of his faithful promises and undertakings, and with a view to defraud your petitioner, wilfully and maliciously neglected to cause said suit to be dismissed; but on the contrary, pursued the same to judgment and execution as above set forth, to the great damage of petitioner.

Petitioner alleges that said Duffau well knew that by the terms of the agreement and understanding, the said order upon said Hamilton was not due; that had the said Hamilton not been put off his guard by the false and fraudulent representations of said Duffau as to what he would do with said suit, he, said Hamilton, could and would have defended successfully the said suit before the said Justice.

Petitioner alleges that said defendant refuses to *reward* your petitioner to purchase back the land so as aforesaid sold upon said judgment; that petitioner had well hoped that said Duffau would have come to a just and amicable adjustment of said matter; but so it is, that the said Duffau utterly refuses to do justice to your petitioner.

Premises considered, petitioner prays process against said defendant, F. T. Duffau, citing him to be and appear, &c.; that upon final trial your petitioner may have judgment against said Duffau for the full value of the land sold as aforesaid under said execution, and for all damages that said plaintiff has sustained for counsel fees, and for exemplary damages, in all to the amount of ten thousand dollars; and for costs; and for all such other and further relief as shall be agreeable to equity and good conscience.

Plaintiff filed an amended petition, which, after amplifying allegations already made in the original petition, alleged as follows:—

Petitioner further alleges, that on the 17th day of Oct., 1855, the said Graves issued an execution upon said judgment, which was placed in the hands of W. C. Walker, a Constable of Travis county, which was returned by him not satisfied, November 14th, 1855; and that on the day previous thereto, to wit: on the 13th day of November, 1855, he, the said defendant, for the purpose of sacrificing the property of petitioner in fraud of his rights, at the special instance and request of the said defendant, fraudulently procured an execution from said Graves, upon said judgment, and addressed it to the Sheriff of Wharton county, alleging, on its face, that the execution had been issued to the proper officer of Travis county, and returned no property found; when in truth no execution, at that date, had been returned, and the first execution that was returned does not show that no property could be found in the said county of Travis; all of which actings and doings on the part of said defendant, the said Graves and Walker, after defendant had promised the said Hamilton to dismiss said suit the second time, were without the knowledge or consent of your petitioner or his agent; neither petitioner nor his agent having any knowledge of the rendition of judgment, or that an execution had been issued and forwarded to the Sheriff of Wharton county, until it was too late to procure an injunction to restrain the sale of the land that was sold under said execution

as alleged in the original petition; the distance from Austin to Wharton county being about one hundred and seventy miles.

And petitioner alleges that in consequence of all the false and fraudulent representations and fraudulent acts of the defendant, in secretly failing to comply with his several contracts as hereinbefore charged, your petitioner has been fraudulently prevented from defending said suit before said Graves, or taking the legal steps to annul and set it aside, or to prevent the sale and sacrifice of the land described in the original petition, as therein charged.

Plaintiff twice again amended his petition, amplifying certain allegations already made in the original petition.

Defendant demurred, and for grounds of demurrer showed,

1st. That the alleged agreement to the effect that the acceptance of said order by Hamilton was to be qualified as alleged, is not shown to have been upon any consideration.

2d. That it was not shown that any time was fixed by said alleged agreement, within which said order should be paid, wherefore said agreement would be void for uncertainty.

3d. That plaintiff nowhere avers that he at any time had any funds in his hands, or in the hands of his agent, or of any other person, with which to meet said order.

4th. That the alleged extension of time and further indulgence to plaintiff, as well as the alleged promise to dismiss said suit before Justice Graves, were without consideration to defendant.

5th. That defendant shows no valid defence which he could have set up to the said suit before the said Justice of the Peace.

Defendant answered further, as to the facts; but said answer is not now material.

Demurrer sustained, and suit dismissed.


*Chandler & Turner*, for appellant. We contend that this action is maintainable upon two grounds. The first of which is the promise of the defendant to dismiss the suit, and receive the acceptance of Hamilton, and thus prevent litigation; the right of the party to recover being doubtful, he not having presented the order at all. (See Parsons on Contracts, Vol. 1, Book 2, Chapter 1, pages 363, 364–368; O'Kisson v. Barclay, 2 Penn. 31.)

The incurring of a liability in consequence of the promise of another is a good consideration to support a promise. (See Par-

sons on Contracts, same Book, page 369.) We show these cases to establish the fact that Hamilton's promise to accept the order was binding upon him.

The petition shows that the order was never presented to Hamilton for acceptance; nor for payment; and until the same had been done the defendant Duffau had no cause of action against plaintiff. (See Story on Bills, Book 1, Sec. 108.) Duffau's rights then were doubtful, and any promise to settle is good consideration and valid in law, and Hamilton had assured him if he went on he would defend the suit.

2d. We say the actings and doings of the defendant were fraudulent, and fraud accompanied with damage is a good cause of action. (Bouvier, Dict. p. 595, 596.)

*Hancock & West*, for appellee. Hamilton had no funds, and the agreement to wait until Hamilton did have funds was wholly without consideration and of no effect in law. He would have been waiting forever, for Hamilton might never have funds; under the circumstances acceptance or presentation was unnecessary. Travis nowhere says that Hamilton was ready to pay the note, but avers his readiness to accept it according to his understanding. The following authorities are believed to be conclusive on this point: Story on Bills, Sec. 228, 284; Story on Prom. Notes, Sec. 22; Chitty on Bills, 134–135; Edwards v. Hasbrook, 2 Tex. R. 578; 7 New Hamp. 430; Hasbrook v. Palmer, 2 McLean, 10; 2d Vol. of Parsons on Cont. 446–448, 454–460; 14 Tex. R. 602.

Again, the judgment was rendered by a Court of competent jurisdiction on a just debt, and the appellee cannot be made to pay the appellant the damages he may sustain by not paying his debts.

If the judgment was erroneous and tainted with fraud, he should have applied to set it aside, or had it revised by *certiorari*, or *enjoined* the sale, or taken some other course that would have brought about a revision of the judgment. His excuses for his laches are wholly insufficient. The pretended extension of time and promise to discontinue amount to nothing; they are wholly and utterly without consideration to appellee, and were not binding if ever made.

The case is an unprecedented one, and we can find no analogous one in Sedgwick or any other work we have had access to. The damage is so remote and inconsequential, and the acts which

are alleged as evidence of fraud are so little calculated to produce that impression, that we feel satisfied that, admitting every allegation in the petition to be true, there was no cause of action shown.

ROBERTS, J. The error assigned is, that the Court dismissed appellant's petition, as not containing a cause of action.

The alleged injury complained of is the breach of a promise made by Duffau to Hamilton, agent of Travis, to discontinue a suit brought by Duffau against Travis on a draft for sixty-three $\frac{40}{100}$ dollars. The damage complained of, is the loss of a tract of land of 1107 acres, worth five dollars per acre, situated in Wharton county, which was sold by the Sheriff of Wharton county, as the property of Travis, by virtue of an execution, issued upon the judgment rendered on said draft;—the land having been sold for the sum of one hundred and fifty dollars only.

The first question is, Was the breach of promise under the attendant circumstances an injury recognized by law? The petition does not state that there was any new consideration given, for the promise, which was broken. It was the original understanding that Hamilton was to accept and pay the draft as agent of Travis, when he should have funds in hand, sufficient to do so. Hamilton's subsequent undertaking thus to accept, did not confer any additional benefit upon Duffau, nor any increased security for his debt. The breach of what is a *nudum pactum* cannot inflict an injury capable of legal redress, because it is not a violation of a legal right. (See Sedgwick, 31.)

Again, the petition does not state what character of funds he had in the hands of Hamilton, or when they would be made available to meet this demand of Duffau, so as to show the propriety of a further reliance on them to collect the debt. It does not appear from the petition, that Hamilton has means in hand, even up to this time, to satisfy the debt. The debt was due when the draft was made, and the verbal arrangement made for Travis' agent to pay it, was doubtless for his indulgence and accommodation, and the petition does not present facts which put Duffau wholly in the wrong in not continuing to give the indulgence, and to rely upon the verbal arrangement for his money. The discontinuance of a favour gives no cause of action. (Sedgwick on Dam. 31.)

The second question is, Is the damage complained of sufficiently proximate to the alleged injury in the breach of promise? (See Sedgwick, 66.)

It has been laid down by good authority, as the result of the cases, that when the contract is to do or refrain from doing a particular thing, the party in default shall be held liable for all losses that may fairly be considered as having been in the contemplation of the parties at the time the agreement was entered into. (Sedgwick, 112.)

It could hardly be supposed that the parties contemplated the alleged loss of 1107 acres of land in Wharton county, when arranging for the payment of this debt amounting to sixty-three $\frac{40}{100}$ dollars, or when contracting in relation to a discontinuance of the suit thereon.

No case in point has been cited in favour of appellant, and it is not believed any such can be found.

Mr. Sedgwick, in his work on the measure of damages, recites a case from New York, without giving the name of the case, which is more directly relevant, in principle, than any that has been found. "The plaintiff sued the defendant on a contract by which defendant, in consideration of five dollars, paid him, agreed to take a note executed by plaintiff and a surety payable the first of May, and to forbear the prosecution of the note five months; and it was alleged that defendant did not forbear, but sued on the note, by which plaintiff lost $500. The plaintiff offered to prove, to enhance the damages, that when he was sued he was engaged in his harvest, and that for the purpose of raising money to satisfy the demand, he was obliged to quit his work, and thresh his grain, and that he was put to great trouble in raising the money. Woodworth, J., said : 'It appears to me that this could not form a ground of damages, although the plaintiff might have suffered inconvenience and loss, by the failure to fulfil the contract. Such remote consequences cannot be taken into consideration in estimating the damages.' "

Here was contract of forbearance founded on a consideration and a serious loss resulting, though too remotely, from the breach.

Another consideration presents itself in this case of no little weight, which arises out of the question, Can this loss of so large a tract of land be properly attributed, even remotely, to Duffau ? The petition does not state that he required the Sheriff of Wharton county to levy on this land at all. Had the Sheriff

levied upon just enough of the land to pay the debt, the loss, if any, resulting to Travis, must have been small.  The petition states no facts which would render Duffau responsible for this apparently excessive levy.  It is this excess which constitutes the great loss of Travis, according to the statements of his petition.

" In a case in which the defendant had slandered the plaintiff, who was employed by one J. O. for a year, at certain wages, and plaintiff claimed special damages (in the suit for slander) for his discharge by J. O. in consequence of the slander, before the expiration of the year, it was held by Lord Ellenborough that the discharge of plaintiff by J. O. was a mere wrongful act, and not the legal and natural consequence of the slander complained of." (Sedg. on Dam. 66.)

So it may with equal propriety be said, that the alleged wrongful act of the Sheriff was not the legal or natural consequence of the persistence of Duffau in his suit, contrary to his agreement as alleged.

There is no effort, in this case, to attack the judgment, or set aside the sale, or recover any other damage than that arising from the loss of the land.

We are of opinion that the Court did not err in dismissing the petition; and therefore the judgment below is affirmed.

Judgment affirmed.