DANIEL W. AMES *versus* SAMUEL TAYLOR.

An officer, who has seized property on execution, does not abandon the seizure by leaving it in charge of a keeper, in a building to which the debtor has access, as well as the keeper, though the latter refuses to become responsible for the property if burned or stolen.

An agreement by an officer, not to move property seized by him on execution, and entrusting it to the custody of another, is a sufficient consideration for an agreement by the latter, to keep the property safely, and have it forthcoming at the sale on execution.

For breach of such agreement, the officer may maintain an action.

ON REPORT.

ASSUMPSIT by the plaintiff, as deputy sheriff, against the defendant for breach of an agreement to keep property seized on execution.

The evidence tended to prove that the plaintiff, as deputy sheriff, seized upon execution, against the defendant's father, on the 10th day of November, A. D., 1858, two wagons, of the value of $160; that the plaintiff found the wagons in an old mill, of which the defendant had the key, but in which one Kilgore, who lived a few rods off, had a room for a shop; that the plaintiff did not remove the wagons, but made an arrangement with Kilgore to take charge of them, until other arrangements could be made, and, if any body undertook to meddle with them, to inform such person that they had been seized on execution; but he was not to be responsible if they should be burned or stolen; that, on the next day, the plaintiff returned and saw the defendant, who, after some negotiation, agreed that, if the plaintiff would not move the wagons, he would keep them and have them forthcoming at the time of the sale on the execution, which was fixed for Nov. 15, 1858; that, relying upon this agreement, the plaintiff did not move the wagons; that the debtor was then away from home and did not return until after the plaintiff left, on the eleventh; that the defendant told the debtor, on his return, that the wagons had been taken on execution;

that the debtor then took the defendant's horse and went towards the mill, and the next morning took his horse again, and went towards the mill, and did not return till night; that, on the day of the sale, of which legal notice had been given, the plaintiff went to the mill after the wagons, and found that they had been taken away.

The Court were to render such judgment upon the evidence as the rights of the parties required.

The case was argued, chiefly upon the facts, by

*J. S. Abbott*, for the plaintiff, and by

*Webster*, for the defendant.

The opinion of the Court was drawn up by

GOODENOW, J. —In my opinion, it appears from the evidence reported, that the wagons were legally seized by the plaintiff, on execution, and the seizure was not abandoned, nor lost, up to the time when the agreement was made with the defendant; that the agreement alleged in the writ is proved by two witnesses, and is satisfactorily established, notwithstanding the denial of the defendant, whose complicity with the debtor, in the fraudulent secreting of his property may well be suspected; that said agreement is founded on a good and legal consideration; and that the defendant has failed to perform the same.

The wagons are alleged in the writ to have been of the value of one hundred and sixty dollars, and the testimony proves them to have been of that value.

*Judgment for the plaintiff.* —*Damages*, $160, with interest from *November* 15, 1858.

TENNEY, C. J., RICE, MAY, DAVIS and KENT, JJ., concurred.