### JOHNSON et al. v. BRECKENRIDGE-STEPHENS TITLE CO. (No. 2533.)

(Court of Civil Appeals of Texas. Texarkana. May 15, 1922. Rehearing Denied May 18, 1922.)

**1. Contracts ⬅10(1) — Agreement to pay stipulated percentage for abstract made by use of plaintiff's indexes held unilateral.**

A contract, whereby plaintiffs agreed to permit defendants to use their abstract indexes for the making of abstracts for so long a time as the abnormal demand for such work, because of the oil boom, continued, and defendants agreed to pay a percentage of the amount received for all abstracts made by them by the use of the indexes, but did not agree to use the indexes or make any specified number of abstracts therefrom, was unilateral and lacking in mutuality, even if the term was sufficiently definite.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Specific performance ⬳32(1)—Unilateral contract unenforceable.**

If a contract is incapable because of want of mutuality of being enforced against one party, that party is equally incapable of enforcing it specifically against the other.

**3. Specific performance ⬳32(2)—Part performance of unilateral contract renders it enforceable only to extent for compensation for such performance.**

Where a contract to pay a percentage of receipts from abstracts made by the use of plaintiff's indexes was unenforceable because of want of mutual promise to use the indexes in the making of abstracts, a partial performance of the contract by the use of the indexes in making some abstracts would render it enforceable only as to the percentage paid for such abstracts, and would not entitle the defendants to compel plaintiffs to permit the further use of their indexes.

**4. Contracts ⬳10(1)—Unilateral contract is terminable at the will of either party.**

A contract which is unilateral is determinable at the will of either party, notwithstanding a provision fixing its term.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by the Breckenridge-Stephens Title Company against Joe D. Johnson and others, in which defendants filed counterclaim. Judgment for the plaintiff for the amount admitted by defendants on his cause of action and against defendants on their counterclaim, and defendants appeal. Reformed and affirmed.

The appellee, a corporation formed for making, compiling, and owning abstracts of title to lands, brought the suit against appellants, who are copartners engaged in the business of making abstracts of title to land. The petition alleged:

"That heretofore, to wit, during the months of April and May, 1919, defendants had access to and use of the files, records and abstract plant, which was the property of plaintiff. It was understood and agreed that so long as defendants were permitted to use said files, records, and abstract plant defendants were to pay plaintiff the sum of 30 cents a page for the use of the same on all abstracts and records prepared by said defendants. That during the months of April and May, 1919, defendants used the same, and compiled more than 5,000 pages of abstract matter therefrom. That because of such use and access and the agreement to pay therefor defendants owe plaintiff $1,500, which defendants have refused to pay and for which suit is brought."

The appellants answered by a general denial and set up a cross-action against the appellee. The cross-action alleged:

"That heretofore, to wit, on or about March 20, 1919, these defendants entered into a verbal contract with Luckel-Darnell, Inc., a private corporation under the laws of Texas, with place of business in Breckenridge, Tex.; said company at the time being engaged in the business of compiling and selling abstracts of title to lands in Breckenridge, Stephens county, Tex., and owning an abstract plant containing indexes to public records of Stephens county, Tex. That under and by virtue of the terms of said agreement the defendants were to have the right to use the indexes and other records of the abstract plant of the said Luckel-Darnell, Inc., for the purpose of making, compiling, preparing and selling abstracts of land titles in Stephens county, Tex. That under and by virtue of the terms of said agreement the defendants were to pay the said Luckel-Darnell, Inc., thirty per cent. of all of the money collected from the sale of all abstracts made and sold by said defendants. That under and by virtue of the terms of said contract same was to remain in force and effect so long as the abstract business in Stephens county, Tex., remained and continued more than it normally was prior to the oil boom and activity in said county."

Then follow allegations of an undertaking on the appellants' part to perform, and a partial performance of the agreement, and then an ouster from a further use of the property, and a breach of the agreement on appellee's part, and the damages sustained thereby by appellants.

In the cross-action the appellee filed a demurrer and special exceptions, and specially answered, pleading that the appellee corporation did not assume any such contract as pleaded; the statute of frauds; and that the contract, if any were made, was terminable at the will of appellee.

The case was submitted to the jury on special issues. The court charged as follows:

"You are instructed that the plaintiff charges and the defendants admit that they are indebted to the plaintiff in the sum of $1,035, which was due on or about June 1, 1919. You are therefore instructed to return a verdict for the plaintiff against the defendants in said amount."

The court then submitted for findings special isues on the cross-action of the appellants. On the special issues as submitted the jury made findings in favor of appellant, which included findings of amount of damages. The court entered judgment on the instructed verdict in favor of the appellee, and entered judgment in favor of the appellants as to the sum of $366.75 damages found in special issue No. 8 as a credit on the amount of appellee's recovery, but against the appellants as to the other item of damages found by the jury. The following appears as the court's conclusion for the rendition of the judgment:

"It is the opinion of the court, and the court so finds, that the agreement or contract as sued upon by the defendants herein in their cross-action is unilateral and lacking in mutuality, and is therefor unenforceable, and that the defendants should and ought not to recover any

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

damages alleged to have been sustained by them thereon save and except such damages as the jury found the defendants did sustain in answer to special issue No. 8, and for this reason, and this reason alone, the court refuses to enter judgment for the item of damage found by the jury in favor of the defendants on their cross-action in answer to special issue No. 9; and by such refusal to enter judgment upon such item of damage it is not intended by the court to find that the finding of the jury in favor of damages and the amount thereof is not a correct finding and is not one warranted by the evidence."

The following evidence was introduced by the appellants in support of the contract alleged. Mr. Walker, one of the appellants, testified that he made a contract with Judge Jackson of Luckel-Darnell, Inc., about March 23 or 24, stating:

"The conversation between Judge Jackson and myself was that this contract was to run, that we were to make abstracts, so long as the business was above normal. By that I mean oil business—before oil was struck. Judge Jackson asked, 'How long—now when shall this terminate?' I said, 'When business settles back to where it can be taken care of by the old company; of course it would not pay us to stay any longer, and we would then quit.' He said, 'That would be perfectly satisfactory.' We were to pay him 30 per cent. The pages ordinarily were $1 per page, which would be $30 out of every $100. We were to pay him 30 per cent. of the amount we got from the abstract—30 per cent. out of every dollar we collected."

On cross-examination he testified:

"I could not tell just exactly what I said to Mr. Jackson and what Mr. Jackson said to me, but I will do my best. Joe and I talked when we first met him. We told him that the abstract business was overrun here, and we talked with him about putting in a new company probably, and then we got down to the contract. We asked him if there were a chance to make a deal with him to obtain the use of his files. He said that he had not thought of it, but there probably would be, because he thought it would be a good thing for the company, and that he would talk to Mr. Bird. He did [talk to Mr. Bird], and we came back later and talked to him. He asked us for 50 per cent. We contended for that for a quite a while. We left the office and got in a car. * * * I got out of the car and went back, and when I got back Judge Smith was talking to him about this proposition. Judge Jackson said, 'We are going to let you boys have it at 30 per cent.' I said, 'Judge, I will let you know to-morrow or the next day.' Joe and I talked it over on the way home, and I sat down that day and wrote him we would accept the proposition as we had agreed upon."

There is no other evidence concerning the terms of the agreement.

There is evidence that the appellants bought supplies and typewriters and on April 2, 1919, began to make, and did make altogether, about 110 abstracts, and collected the price therefor; and on May 1, 1919, paid to appellee $349.90 of the amount collected. On May 24, 1919, appellee notified appellants that they could not longer use the records and indexes, and refused to permit them to do so after that date.

The Luckell-Darnell, Inc., was merged into and became the Breckenridge-Stephens Title Company, a private corporation, on March 28, 1919.

Capps, Cantey, Hanger & Short, G. A. Johnson, and Ocie Speer, all of Fort Worth, for appellants.

Marvin H. Brown and Chas T. Rowland, both of Fort Worth, for appellee.

LEVY, J. (after stating the facts as above). The jury made the finding that the agreement was made according to the terms alleged by appellants in their cross-action. The court then concluded that the agreement, according to the evidence and as alleged and found by the jury to have been made, was, in legal effect, unilateral, and could not be enforced, as to the damages sought, specifically against the appellee.

Consequently the controlling question presented in the record to be determined is that of whether or not the court erred in concluding, as he did, that the contract relied on by appellants to sustain their cross-action was, in legal effect, a unilateral agreement. If it were not a unilateral agreement, but such an agreement as would be legally enforceable according to its terms, then the judgment, we think, would have to be reversed and the entire cause remanded. The appellants, in view of the record, would not be entitled to have a judgment in their favor on the verdict as to some of the damages found by the jury. The charge on the measure of damages was also incorrectly stated. On the other hand, if the court correctly concluded that the agreement was not legally enforceable according to its terms because unilateral, then the action of the court in treating the finding of the jury as immaterial on the question of damages in favor of appellant would not be reversible error.

[1] According to the agreement it appears that—

(1) "The defendants were to have the right to use the indexes and other records of the abstract plant" which was owned by and in the possession of the Luckel-Darnell, Inc., "for the purpose of making, compiling preparing and selling abstracts"; and (2) "the defendants were to pay the Luckel-Darnell, Inc., 30 per cent. of all the money collected from the sale of all abstracts made and sold by said defendants"; and (3) "the terms of said contract were to remain in force and effect so long as the abstract business in Stephens county remained and continued in force more than it normally was prior to the oil boom and activity in said county."

Are there reciprocal promises, so that there is something to be done by both parties?

According to the terms, the Luckel-Darnell, Inc., either offered or promised to give the appellants "the right," or permission, "to use," or have casual access to, the indexes and records, to enable the appellants to prepare abstracts therefrom. The term "right to use" was not intended in the sense of disposition or exclusive possession of the property to appellants. There was no consideration expressed or moving at the time to the Luckel-Darnell, Inc., for the offer or promise to give permission of casual use to appellants of the indexes and records. The only obligation of the Luckel-Darnell, Inc., is an implied promise to receive the 30 per cent. collected from the sale of abstracts for such time as it may suffer or permit appellants to continue "the right to use" the property. In effect the Luckel-Darnell, Inc., was merely giving to appellants permission to have access to and make casual use of the property owned by it and in its possession, and impliedly agreeing to accept a special price for the use, if used by appellants. The appellants, according to the terms of the agreement, were under the obligation only, as an implied promise, to pay 30 per cent. of all money collected from the sale of abstracts when made, if any were ever made and sold by them. Even though the appellants may have been promised "the right" to the use of or access to the property "so long as the abstract business in Stephens county remained and continued more than it normally was prior to the oil boom and activity in said county," still there is no promise appearing on their part to make "use" of the property at any period or time during the continuance of any such right or permission. There is no promise, express or implied, on the part of the appellants "to use," under the granted "right" or permission of the Luckel-Darnell, Inc., the indexes and records at any time either during the day, week, month or year. It was entirely at the option or will of the appellants, and not obligatory upon them, to make use at all of the property. Neither is there any promise on appellants' part "to use, prepare" from the indexes and records, "and sell," any specified or ascertainable number of abstracts. There is no agreement "to prepare and sell" any abstracts at all made from these indexes and records. There was no time set or ascertainable for the appellants to begin to prepare and then sell abstracts from the indexes and records. In effect the appellants were not required, according to the terms, to make "use" of the property described and to perform the agreement. Their only obligation is an implied promise to pay at a stipulated price for such "use" of the property as is ever made of it. Considering, then, the nature and terms of the agreement, could the appellee have recovered damages in a suit against appellants for refusing, in the first instance, to commence and perform the contract? The clear defense of appellants to such suit would be, it is evident, that, under the terms of the agreement, whether or not any "use" was to be made of the property at any time by them was to be determined solely by their own arbitrary discretion and will. There would appear and be found the want of mutuality.

[2] It is a general principle of law that if a contract is incapable, in the want of mutuality, of being enforced against one party, that party is equally incapable of enforcing it specifically against the other. Therefore if it appears, as it does, from the terms of the agreement under consideration, that the "right" or permission "to use" or have casual access to the indexes and records could be declined or terminated in the inception or first instance at the will of appellants without liability for damages, it must follow that its continuance was dependent upon the pleasure of both parties.

[3] Further, would some performance on the part of appellants legally operate to render the agreement binding and enforceable? Undoubtedly it would to the extent of the "use" made. But a partial performance only would not relieve the agreement here of the want of mutuality in essential respects. The want of mutuality consists not only in the want of assent on the part of appellants to be bound by the permission to use the property, but, further, the want of definiteness as to the time the "use" would commence and the constancy of the use and the quantity or number of abstracts that would be required to be made from the indexes and records. The act of some performance would only relieve the agreement of the want of assent on appellants' part to be bound by the agreement. The assent to be bound by the agreement, though, would not legally relieve the agreement from the otherwise indefiniteness of the lack of mutuality as to the future quantity of output of abstracts made from the records and indexes, or the frequency or irregularity of the "use" of same. Whether the "use" in the future would be frequent or very occasional would still be at the mere will of appellants. No agreement in these respects can be inferred from acts, in the absence of definite or prescribed terms of previous agreement.

[4] We conclude that the contract itself here in controversy is indefinite and unilateral, and therefore determinable, as the court below held, at the will of either party. Grocery Co. v. Jamison (Tex. Civ. App.) 221 S. W. 998; Film Co. v. Morris & Daniel (Tex. Civ. App.) 184 S. W. 1060; Goff v. Saxon, 174 Ky. 330, 192 S. W. 25; Cold Blast Co. v. Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696. As the appellants were not entitled to recover on the contract, the amount allowed on jury finding as a set-off against the appellee should, as contended on assignment of appellee, be disallowed. Therefore the judgment is reformed so as to

disallow and deny as a credit the sum of $366.75 in favor of appellants; and, as reformed, the judgment is affirmed.