**JOHNSON et al. v. BRECKENRIDGE-STEPHENS TITLE CO.**
(No. 491–3888.)

(Commission of Appeals of Texas, Section A.
Jan. 2, 1924.)

**1. Contracts ⬥⇒10(1)—When mutuality of obligation is not essential stated.**

While, from the very nature of a unilateral contract, mutuality of obligation is not essential, such is the case only where some other consideration for the option passed to the promisor at the time of making the promise.

**2. Contracts ⬥⇒10(1)—Agreement to pay stipulated percentage for abstract, made by use of plaintiff's indexes, held unilateral and without mutuality, notwithstanding uncommunicated intention to purchase equipment.**

A contract whereby plaintiffs agreed to permit defendants to use their abstract indexes for the making of abstracts, and defendants agreed to pay percentage for all abstracts made by them by use of the indexes, without however agreeing to use the indexes, was unilateral and lacking in mutuality, ·notwithstanding a secret or uncommunicated intention of the defendants in pursuance of the contract to buy sufficient equipment and go to such expense as might be required to fit them to make practical use of the indexes. ·

**3. Contracts ⬥⇒10(1)—Purchase of equipment in reliance of contract lacking in mutuality a mere hazard.**

Where defendants entered into a contract to pay on percentage basis for use of plaintiff's abstract indexes, but did not agree to use the indexes or make any specified number of abstracts, they were charged with knowledge of the law that their contract was a nudum pactum for the essential lack of consideration, and, where they purchased equipment at substantial expense, the purchase was a mere hazard they took on the assumption that plaintiff would continue to allow them the privilege of using the indexes without exercising its right to terminate the agreement.

**4. Contracts ⬥⇒53—Specific performance ⬥⇒ 49(1)—Question of consideration of contract determined by conditions as existing when contract made; contract without consideration not enforceable.**

Whether a contract rests upon a valuable consideration must be determined by the conditions as they exist when it is made, not as they may be at some subsequent time, and, in the absence of any sufficient consideration, the law supplies no means and affords no remedy to compel the performance of a simple executory agreement made without consideration.

**5. Contracts ⬥⇒10(1)—Defendants held liable on implied promise for use of abstract indexes under contract lacking in mutuality.**

Where plaintiff and defendants entered into a contract lacking in mutuality and consideration, whereby plaintiff agreed to permit defendants to use its abstract indexes for the making of abstracts, and defendants agreed to pay a percentage of the amount received for all abstracts made by them by the use of the indexes, but did not agree to use the indexes or make any specified number of abstracts therefrom, plaintiff, upon withdrawal of its consent to the use of the indexes, was entitled to recover the proposed charge for such abstracts as had up to that time been made by the defendants from the indexes under an implied promise which the law will enforce.

**6. Contracts ⬥⇒10(1)—Party giving option under contract containing no reciprocal promise, and otherwise lacking consideration, may withdraw privilege at any time.**

A contract whereby plaintiff permitted defendants to use its ·abstract· indexes, and defendants agreed to pay percentage of amount received for abstracts made by the use of the indexes, unilateral and lacking in mutuality for lack of consideration, was not rendered valid or enforceable because plaintiff permitted defendants to use the indexes for several months, and defendants paid therefor the percentage agreed upon, and plaintiff could terminate the contract and withdraw the privilege of using the indexes at any time. ·

**7. Trial ⬥⇒357—Courts may ignore special findings of jury not supported by pleadings or evidence.**

Rev. St. art. 1990, denying the right of trial judge or appellate courts to render judgments non obstante veredicto, where special verdicts have been found by juries, whether there is evidence or not to sustain the findings, does not preclude the courts from ignoring special findings of a jury which have no support either in the pleadings or the evidence, and which manifestly ought not to have been submitted at all.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by the Breckenridge-Stephens Title Company against Joe D. Johnson and others, in which defendants filed counterclaim. From a judgment of the Court of Civil Appeals (241 S. W. 195), reforming and affirming a judgment for plaintiff, and against the defendants on their counterclaim, defendants bring error. Affirmed.

Ocie Speer and Gillis A. Johnson, both of Fort Worth, for plaintiffs in error.

Marvin H. Brown and C. T. Rowland, both of Fort Worth, for defendant in error.

BLANKS, J. The defendant in error, referred to in this opinion as the abstract company, instituted this suit in the district court of· Stephens county against the plaintiffs in error, to recover the sum of $1,500, alleged to be due it on an account stated in the following allegation of the abstract company's petition: ·

"That heretofore, to wit, during the months of April and May, 1919, defendants had access to and use of the files, records, and abstract plant, which was the property of plaintiff. It was understood and agreed that so long as defendants were permitted to use said files, records, and abstract plant defendants were to pay

plaintiff the sum of 30 cents a page for the use of the same on all abstracts and records prepared by said defendants. That during the months of April and May, 1919, defendants used the same and compiled more than 5,000 pages of abstract matter therefrom. That because of such use and access and the agreement to pay therefor defendants owe plaintiff $1,500, which defendants have refused to pay, and for which suit is brought."

The case was removed to the district court of Tarrant county, on a plea of privilege filed by plaintiffs in error.

Upon trial there, the jury, in response to special issues, found the contract to be as alleged in the cross-action of plaintiffs in error, to wit:

"That heretofore, to wit, on or about March 20, 1919, these defendants entered into a verbal contract with Luckel-Darnell, Inc., a private corporation under the laws of Texas, with place of business in Breckenridge, Tex.; said company at the time being engaged in the business of compiling and selling abstracts of title to lands in Breckenridge, Stephens county, Tex., and owning an abstract plant containing indexes to public records of Stephens county, Tex. That under and by virtue of the terms of said agreement the defendants were to have the right to use the indexes and other records of the abstract plant of the said Luckel-Darnell, Inc., for the purpose of making, compiling, preparing, and selling abstracts of land titles in Stephens county, Tex. That under and by virtue of the terms of said agreement the defendants were to pay the said Luckel-Darnell, Inc., 30 per cent. of all of the money collected from the sale of all abstracts made and sold by said defendants. That under and by virtue of the terms of said contract same was to remain in force and effect so long as the abstract business in Stephens county, Tex., remained and continued more than it normally was prior to the oil boom and activity in said county."

In their pleadings, plaintiffs in error, following the allegation of their version of the contract, made this additional allegation:

"That it was contemplated at the said time of the entering into of said contract that the defendants would go to all the expense necessary in preparing themselves to prepare and sell abstracts as aforesaid, and it was contemplated at said time between the parties that the defendants would continue in the preparing, compiling, and selling of abstracts in the manner and way above set out, so long as the abstract business in said Stephens county remained more than it normally was prior to the oil activity in said county."

They then alleged substantially that in "pursuance of the contract," it became necessary for plaintiffs in error to, and they did, purchase typewriters and supplies and went to the expense of removing from Fort Worth to Breckenridge, established their business there, and began, with the abstract company's consent to make active use of such indexes and files in the preparation of abstracts for which they had orders, and so continued for about two months, when they were prevented by the abstract company from further use thereof, although during the time they had such use of said files and indexes they paid the abstract company several hundred dollars in accordance with the terms of the agreement. They admitted owing the abstract company a balance of $1,177.20, less a credit thereon of $141.20 due them by the abstract company for certain abstracts made by them for it, leaving a net balance of $1,035.80, which they proposed should be allowed as a credit upon their counterclaim pleaded in the following items:

"(1) Damages sustained by loss on expense of supplies, and moving to Breckenridge, $430.63.

"(2) Damages sustained by reason of appellee's refusal to allow appellants to prepare 54 abstracts, for which they had received orders during the time of actual operation under the contract and prior to their exclusion by appellee, $1,815.

"(3) Damages sustained by loss of 18 months' future profits on orders reasonably expected, $25,184.52."

All exceptions of both parties were overruled by the trial court, the jury was instructed to return a verdict in the abstract company's favor for $1,035.80, and in answer to special issues submitted, the jury found:

(1) That the contract between the parties was as alleged by plaintiffs in error, and quoted above.

(2) That it was not agreed between the parties that the contract was terminable at will.

(3) That the plaintiffs in error sustained $366.75 damages by reason of having purchased the typewriters and supplies, and representing, under the measure of damages submitted by the court, the difference between the cost of the supplies which the jury found to be necessary for plaintiffs in error to purchase for performing "the probable work to be performed under the contract, and which they were not permitted by the abstract company to perform," and the market value of such supplies "in Breckenridge, or the nearest place where same could be disposed of at or immediately after the termination of the contract."

(4) That the amount of the net profits which the plaintiffs in error would "in all probability" have made under the contract from the 1st day of June, 1919, down to the 1st day of December, 1920, was $24,875.

(5) That the abstract business in Stephens county, since on or about March 20, 1919, continuously remained more than it normally was prior to the oil development and activity in said county down to the date of trial (December 9, 1920).

It may be mentioned here that the allegations and proof showed that whatever

contract was made by plaintiffs in error was a parol one, and was originally made with Luckel-Darnell, Inc., a corporation engaged in the abstract business at Breckenridge, which corporation, a few days subsequent to the beginning of work by plaintiffs in error under their contract, was taken over by and merged into the defendant in error corporation.

In that relation the jury found that at the time of the merger the defendant in error corporation, which instituted this suit in its own name, was fully advised of the agreement, and by the trial court and the Court of Civil Appeals the transaction was treated as if the agreement had been originally entered into between defendant in error and plaintiffs in error, and will be so considered here; the facts manifestly authorizing the propriety of such conclusion.

Timely motions for judgment on the jury's findings were made by both parties, and the trial court, concluding "that the agreement or contract as sued upon" by plaintiffs in error "in their cross-action is unilateral and lacking in mutuality, and is therefore unenforceable." but otherwise without prejudice to such findings, rendered judgment for the abstract company for the $1,035.80, with 6 per cent. interest from June 1, 1919, and costs of the Tarrant county district court, and allowed as a credit thereon the item of $366.75 damages found by the jury to be loss sustained by plaintiffs in error in the supplies, but rejected and refused to allow the $24,875 item.

Motions for new trial by both parties were overruled, and an appeal was prosecuted by plaintiffs in error to the Court of Civil Appeals at Fort Worth, from which the cause was transferred to the Texarkana court, and there, on cross-assignments by defendant in error, the item of $366.75 damages allowed plaintiffs in error by the trial court was eliminated. and, as so reformed, the judgment of the trial court was affirmed (241 S. W. 195), the Court of Civil Appeals holding the agreement between the parties to be of such unilateral character, and so lacking in mutuality, as that none of the damage asserted by plaintiffs in error was recoverable. A writ of error has been granted by the Supreme Court.

Considering the agreement between the parties as it was alleged by plaintiffs in error and found by the jury to exist, it is, in its last analysis, nothing more than an option, or mere privilege granted by the abstract company, without any reciprocal promise on the part of the plaintiffs in error. It is conceded that no consideration was paid the abstract company for the grant of this permission at the time it was given.

As claimed to exist by plaintiffs in error, the contract is not in any sense bilateral, because it discloses no corresponding or reciprocal promise of the promisees. Being

unilateral in its nature, the decision of the case must turn upon the question of whether or not there was any implied consideration, or whether the pleadings and evidence show such facts as constituted a subsequent consideration, which would relate back to the time of the agreement, and thus cure the lack of initial consideration.

With respect to the general question of consideration and mutuality, it is stated in 6 R. C. L. § 93, pp. 686, 687:

"As a promise by one person is merely one of the kinds of consideration that will support a promise by another, mutuality of obligation is not an essential element in every contract. Therefore, to say the least, language which is susceptible of the interpretation that consideration and mutuality of obligation are two distinct elements lacks precision. Consideration is essential; mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, the mutual promises must be binding on both parties. But where there is any other consideration for the contract, mutuality of obligation is not essential."

[1] While from the very nature of a unilateral contract, mutuality of obligation is not essential, such is the case only where some other consideration for the option passed to the promisor at the time of making the promise.

This same author in section 94, 6 R. C. L., makes the additional observation:

"As a unilateral contract is not founded on mutual promises, the doctrine of mutuality of obligation is inapplicable to such a contract. If the promisor has received a consideration, his promise is binding, and may aptly be termed an obligation; but, as there is no promise on the part of the promisee, there can be no mutual obligations. * * * An option supported by a consideration furnishes another illustration of a contract which is valid notwithstanding the lack of mutuality"—citing Pittsburg Vitrified Pav. & Bldg. Brick Co. v. Bailey, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745; Dambmann v. Lorentz, 70 Md. 380, 17 Atl. 389, 14 Am. St. Rep. 364; Warren v. Costello, 109 Mo. 338, 19 S. W. 29, 32 Am. St. Rep. 669; East Line Ry. Co. v. Scott, 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758.

In the case last cited, Stayton, C. J., while deciding that mutuality of obligation was not essential to the validity of the contract there under discussion, pointed out the initial consideration of the railway company's agreement to employ Scott, to be the latter's release of a claim for damages against the railway company, and said:

"In Railroad Company v. Dane, 43 N. Y. 241, it appeared that the railway company by letter offered to receive and transport from New

York to Chicago railroad iron not to exceed a certain number of tons, during months specified, at a given rate per ton, and the party to whom the letter was directed merely assented to the proposal, but did not agree to deliver any iron for transportation, and it was held that there was no contract binding on either party for want of mutuality. The action was brought by the person to whom the offer was made, and, while holding as above stated, the court said: 'Had there been a consideration given to the defendant for such option, the defendant would have been bound to transport for the plaintiff such iron as it required within the time and quantity specified; the plaintiff having its election not to require the transportation of any.' 'There can be no doubt but that a contract may be so made as to be optional on one of the parties and obligatory on the other, or obligatory at the election of one of them,' is the declaration of the Supreme Court of New York. Giles v. Bradley, 2 Johns. Cases, 253. We need not go so far as to adopt the entire proposition, but the last branch of it is doubtless correct in all cases in which the option to make an agreement obligatory is supported by valuable consideration."

It is clear therefore that, unless the allegation in plaintiffs in error's cross-bill to the effect that it was contemplated between the parties that plaintiffs in error would go to considerable expense to purchase equipment, establish a working force, etc., and that, "in pursuance of the contract," they did so, operated to import a consideration passing to the abstract company, or such detriment to or change in the status of the plaintiffs in error, as to be the equivalent of an initial consideration, the situation for the plaintiffs in error is not helped.

Indulging, even as against a general demurrer, every intendment in favor of the allegation, it cannot be extended to be an allegation in effect that the plaintiffs in error agreed or bound themselves to purchase typewriters or equipment of any sort, nor that the abstract company, as a condition upon which their promise was made, required the plaintiffs in, error to make such expenditures. It may naturally have been assumed by both the abstract company and plaintiffs in error that the latter would, if they desired to avail themselves of the use of the indexes and files, provide themselves, unless they already were so provided, with the necessary supplies and equipment incident to their business, yet it was neither promised by plaintiffs in error, nor required by the abstract company as an inducement on the one hand or a condition upon the other. We have carefully examined the statement of facts, and there is no proof whatever that the intention of plaintiffs in error to go to such expense was even ever communicated to the other party to the agreement, and in the absence of a pleading sufficient to raise the issue, and proof to sustain it, the courts are powerless to assume it.

[2] The secret or uncommunicated inten-

tion of the plaintiffs in error to, in pursuance of the contract, buy sufficient equipment and go to such expense as might be required to fit them to make practical use of the abstract company's files and indexes obviously cannot be said to be a consideration of which the courts will take, or ever have taken, cognizance. The fact that plaintiffs in error went to this expense, in the absence of any requirement or even knowledge on the part of the abstract company that they do so, or promise to do so on the part of plaintiffs in error, is a mere incident of the transaction.

[3] Charged with knowledge of the law that their contract was a nudum pactum for the essential lack of consideration, it was a mere hazard they took on the assumption that the abstract company would continue to allow them this privilege without exercising its right to terminate the agreement.

As said in Fire Ins. Ass'n v. Wickham, 141 U. S. 564, 12 Sup. Ct. 84, 35 L. Ed. 860:

"The mere presence of some incident to a contract which might under certain circumstances be upheld as a consideration for a promise, does not necessarily make it the consideration for the promise in that contract. To give it that effect it must have been offered by one party and accepted by the other as one element of the contract."

Here there is no pretense either in the pleading or by proof that the plaintiffs in error agreed as a consideration for the permission to use the indexes and files of the abstract company to go to this expense. As stated in Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145:

"In suits upon unilateral contracts, it is only where the defendant has had the benefit of the consideration for which he bargained that he can be held bound."

Had the plaintiffs in error made any reciprocal promises at the time the agreement was made, involving any detriment or expense to them, however slight, a different situation would have been presented, and the contract would have been of that bilateral character, such that when one of the parties complied with his promise, the consideration would have become executed, and the other party effectually bound. This is such a plain proposition as to need the citation of no authorities, but there are many of the highest dignity. Farrington v. Tennessee, 95 U. S. 679, 24 L. Ed. 558.

[4] But, as well stated in Elliott on Contracts, vol. 1, p. 338:

"Whether the contract rests upon a valuable consideration must be determined by the conditions as they exist when it is made, not as they may be at some subsequent time (Casserleigh v. Wood, 119 Fed. 308), and in the absence of any sufficient consideration the law supplies no means and affords no remedy to compel the performance of a simple executory

agreement made without consideration; such a contract is a nude pact, and not binding in law no matter how strongly it may appeal to the conscience."

See Hendy v. Kier, 59 Cal. 138; Eagle Mfg. Co. v. Jennings, 29 Kan. 657, 44 Am. Rep. 668; Ames v. Taylor, 49 Me. 381; Travis v. Duffau, 20 Tex. 49.

[5] But, as related to the item of $1,035.80, which accrued by reason of the use of the abstract company's files, we have an illustration of an implied promise which the law will enforce. The plaintiffs in error, as pointed out in the decision of the Court of Civil Appeals, need not have made any abstracts, but for such as they did make with the use of the abstract company's indexes and files, when they collected from their customers, they were due the abstract company 30 per cent. of the amounts they received. The proposition of the abstract company was to permit the use of their files by plaintiffs in error on that condition, and that, when they did so use them, they became liable for the proposed charge is not controverted in this case, and is a statement of the plainest proposition of law, and is the extent of the holdings in such cases decided by the Courts of Civil Appeals as Anderson v. La Grange First Nat. Bank, 191 S. W. 836; Thomas v. Western Indemnity Co., 206 S. W. 944; Texas Seed & Floral Co. v. Chicago Set Co., 187 S. W. 747, cited by plaintiffs in error.

[6] The fact that for about two months the abstract company continued to permit the use by plaintiffs in error of its indexes and files did not serve to render valid for any future time a contract originally not binding for its lack of consideration. The liability of plaintiffs in error for the payment of the 30 per cent. compensation for the use of the files and indexes accrued as each abstract was made and collected for, and the payment of such consideration by plaintiffs in error was for a privilege already exercised—an implied obligation arising only from their exercise of the privilege—and had no relation to the inception of the contract, for void then, in the absence of any additional consideration, it continued to be void, and was terminable at the will of the abstract company. Cold Blast Transp. Co. v. K. C. Bolt & Nut Co., 114 Fed. 80, 52 C. C. A. 28, 57 L. R. A. 696.

The expression of Justice Sanborn in the case just cited has peculiar application here:

"It is said that the intention of the parties was to make an agreement that the plaintiff should sell and deliver, and the defendant should buy, all the articles of the character specified in the offer which should be needed or required by its business between October 27, 1898, and June 1, 1899; that the purpose of the construction and interpretation of contracts is to ascertain the intention of the parties; and that this contract should be interpreted to effect this intent. The answer is that, while ambiguous terms and doubtful stipulations may be interpreted to carry out the intention of the parties when they fairly evidence it, their secret intention cannot be imported into contracts whose terms and meaning are plain and unambiguous, and do not express it. It is only the intention of the parties which the contract itself expresses that the courts may enforce. In the case at bar the offer of the plaintiff is nothing but a price list. The acceptance of the defendant contains no agreement to buy any of the articles specified in the list, and there is no ambiguity in the terms, or doubt in the meaning, of the writings in issue. To give effect to the intention of the parties which the defendant now alleges would be to ascribe to them a purpose, and to make and enforce for them a contract, which their writings neither express nor suggest; and this is beyond the province of the courts. Railway Co. v. Bagley, 60 Kan. 424, 431, 56 Pac. 759; Woolsey v. Ryan, 59 Kan. 601, 54 Pac. 664; Davie v. Mining Co., 93 Mich. 491, 53 N. W. 625, 24 L. R. A. 357; Vogel v. Pekoc, 157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491; Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1; Turnpike Co. v. Coy, 13 Ohio St. 84; Stensgaard v. Smith, 43 Minn. 11, 44 N. W. 669, 19 Am. St. Rep. 205."

Much stress is laid by plaintiffs in error upon the decision of Chief Justice Key in the case of Edwards v. Roberts (Tex. Civ. App.) 209 S. W. 247, and it is contended that under the authority of that case the plaintiffs in error's cross-bill states a good cause of action. But as we view it there is much to distinguish that case from the instant one. There one Shick agreed in writing to sell "all the gravel" on a certain tract of land he owned to Edwards, at one cent per cubic yard. In reliance on this Edwards went on the land, and, at considerable expense, dug test holes and established the locations for gravel pits. But here the original option clearly signified that Edwards agreed in consideration of the agreement to go to expense in developing the property, and used apt language to imply that consideration. Under a subsequent written agreement, signed and acknowledged by the parties, it was agreed that this price should be increased to two cents per yard. The recited consideration for the latter agreement was the development "at considerable expense to himself" already done by Edwards, and further development promised by him. He thereafter continued the development, and paid Shick some $850 for gravel he removed, when Shick undertook to cancel the transfer. Justice Key held that the contract was bilateral in its inception, Edwards impliedly promising development of the gravel for the right to mine it on the basis of prices agreed upon; that Edwards complied with his promise and had partially developed it when the second agreement was made, and the conveyance was like the ordinary mining agreement, and not terminable at the will of Shick. A mere statement of the facts demonstrates the ob-

vious difference between the facts of that case and this one.

[7] From what has been said it is our conclusion that the cross-action set up by plaintiffs in error was subject to general demurrer, and both a general demurrer and apt special exceptions were presented against it. The findings of the jury on the special issue assessing damages under the cross-action were both without pleadings or evidence to support them, and the issues should not have been submitted by the trial court. Article 1990 of the Revised Statutes, which has been construed to deny the right of a trial judge, or the appellate courts, to render judgments non obstante veredicto, where special verdicts have been found by juries, whether there is evidence or not to sustain the findings, does not preclude the courts from ignoring special findings of a jury which have no support either in the pleadings or the evidence, and which manifestly ought not to have been submitted at all.

We therefore conclude, and so recommend, that the judgment of the Court of Civil Appeals, reforming and affirming the judgment of the district court, as so reformed, be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.